JACKSON, *ex dem.* DANFORTH AND RUSSEL, *against* MURRAY.

THIS was an action of ejectment, for a part of the south half of a lot, No. 28. in the town of *Pompey,* and was tried at the *Onondaga* circuit, before Mr. Justice *Platt,* in 1814.

The plaintiff gave in evidence an exemplification of a *bill* filed in the court of chancery, by *Asa Danforth,* one of the lessors, in 1804, against *Murray,* the father of the defendant,

*Where a person conveys land, in which he has no interest at the time, but afterwards acquires a title to the same land, he will not be permitted to claim in opposition to his deed, from the grantee, or any person deriving title under the grantee.*

*Allen Beach* and *Russell*, and of their *answers*, and the decree of the court of chancery in the cause. The bill, among other things, stated, that in 1792, *Danforth* purchased lot No. 28. of one *Michael Connolly*, for 150 pounds, the legal title then being in one *Jasper Cropsey*, as trustee for *Connolly*. Soon afterwards, at the request of *Connolly*, *Cropsey* executed a deed for the lot in fee simple to *Danforth*, which was placed in the hands of *Isaac Clason*, to be delivered to *Danforth*.

That in 1793, *Danforth*, by parol, agreed to sell and convey the lot to *Beach* and *Russell*, for 1,000 dollars, and they took possession of the lot, and divided it, *Beach* taking the *north*, and *Russell* the *south*, half; and on the 9th of September, 1796, *Danforth* entered into a written contract to convey the lot to them. That in the year 1798, *Danforth* gave an order to receive from *Clason*, *Cropsey's* deed to *D.* but which in the mean time had been delivered to the administrator of *Connolly*, who delivered it to *Beach*, who fraudulently gave up the deed to *Cropsey*.

The bill stated that actions of ejectment had been brought by *Beach* against persons holding under *Danforth*, and prayed that the suits might be stayed, and that *Beach* might be directed to convey to *Danforth*, and for general relief.

*Beach* and *Russel*, in their answer, admitted the parol contract, and division of the lot, and the subsequent written agreement by *Danforth*, and that *Russell* had, *bona fide*, sold his interest in the lot to *Beach*, and given him a power to demand the deed from *Danforth* for *Connolly*; and that, in 1801, *Cropsey* released all his right to the lot to *Beach*.

*Beach* and *Murray* admitted, that in 1801, *Beach* contracted to sell the south half of the lot to *Murray*; but no conveyance was executed; and to secure the payment made, *Beach* executed a mortgage to the defendant, the son of *Murray*.

The order of the court of chancery, in *December*, 1808, directed *Danforth*, on payment of the purchase money, to convey the lot in question to *Russell* and *Beach*, and a reference was made to a master; and after the coming in of the report a final decree was pronounced in *June*, 1811, which dismissed the bill as to *Murray*, as having no interest, and directed a conveyance by *Danforth*, of the *south* half of the lot, to *Russell*, and the *north* half to *Beach*.

The plaintiff then gave in evidence the deed of *Danforth*, dated the 30th of *March*, 1812, made in pursuance of the decree.

The defendant gave in evidence, a deed from *Jasper Cropsey* to *Allen Beach*, dated 12th *September*, 1800, of the whole lot, and a mortgage from *Beach* to the defendant, of the *south* half of the lot, dated 9th *June*, 1803. *Reuben Murray*, the elder, died in 1810, and the defendant continued in possession after his death.

A verdict was taken for the plaintiff, subject to the opinion of the court upon a case containing the above facts.

*N. Williams*, for the defendant.

*Van Vechten*, contra.

SPENCER, J. delivered the opinion of the court. There is no ground on which either of the lessors can pretend to any title to the premises in question.

1. Admitting that *Danforth* acquired a title to the lot by *Cropsey's* deed to him, yet on the 30th of *March*, 1812, *Danforth*, by his deed, devested himself of all claim to the lot; and he then conveyed it to *Allen Beach* and *Jonathan Russell*, the south half of the lot to *Russell*, and the north half to *Beach*.

2. *Danforth* made this conveyance pursuant to the decree of the court of chancery; the bill was filed by him against *Russell*, *Beach*, and the defendant's father, *Reuben Murray*; its object was, undoubtedly, to compel *Russell* and *Beach* to fulfil and execute an agreement made between *Danforth* and them, for the sale and conveyance of the lot by him, and for the payment by them of the price agreed to be given, namely, 1,000 dollars. It is not necessary to notice the unimportant facts in these proceedings; it appears, however, that *Russell* and *Beach* admitted the agreement for the purchase of the lot, with *Danforth*, in consequence of which they made a parol division of it, and shortly after the execution of the contract for the conveyance of the lot, by *Danforth* to *Russell* and *Beach*, *Russell*, *bona fide*, and for a good and valuable consideration, bargained and sold all his right and title in the lot to *Beach*, his heirs and assigns for ever. In 1801, and after the bargain and sale by *Russell* to *Beach*, the latter contracted to sell the south half of the lot to *Murray*, but no conveyance was executed; and to se-

NEW-YORK, cure the payments made,' *Murray* took a mortgage from *Beach*
May, 1815. to his son the defendant.

It appears by the decree, that *Murray*, having no interest in the question, the bill, as to him, was dismissed. The decree is conclusive, as to the subject matter of it; the object of the bill was to protect *Danforth* from a suit at law, brought against him by *Russell* and *Beach*, on his contract to convey to them the lot, on the ground that *Danforth* had the title to the lot, and was ready to convey, on their making the stipulated payment. If the plaintiff can recover, it must be on the principle, that when *Russell* conveyed to *Beach*, *Danforth* had not then conveyed to them; but *Russell* cannot be allowed to say that his deed to *Beach* conveyed no interest. This point was solemnly adjudged in this court, in the case of *Jackson* v. *Bull*, (1 *Johns. Cases*, 90.) It was there held, that a man shall never be permitted to claim in opposition to his deed, by alleging he had no estate in the premises; and that if a man makes a lease of land by indenture, which is not his, or levies a fine of an estate not vested, and he afterwards purchases the land, he shall, notwithstanding, be bound by his deed, and not be permitted to aver he had nothing. The authorities there cited fully warrant the decision.

This view of the case decisively entitles the defendant to judgment.

Judgment for defendant.