## WILLIAMS *vs.* GRAY.

Where two non-residents held in common an unsettled tract of land, which without their knowledge was sold for non-payment of the State taxes; and they after-wards made partition by mutual deeds of release and quitclaim, in common form; after which one of them, within the time of redemption paid the tax to the pur-chaser at the sheriff's sale, from whom he took a deed of release and quitclaim to himself alone, of the whole tract;—it was held that this payment and deed enured to the benefit of them both;—that the party paying had his remedy by action against the other for contribution;—and that he who had not paid, might still maintain a writ of entry against the other, for his part of the land.

THIS was a writ of entry to recover possession of certain lands in *Etna;* and came before the Court upon a case stated by the parties, as follows.

*Gen. Crosby*, being the proprietor of township No. 4, in the second range north of the *Waldo* patent, now called *Etna*, by his deed dated *Dec.* 15, 1810, mortgaged the south half of the township to *Mr. Gray*;—and afterwards, *Jan.* 16, 1812, mortgaged the remaining half to the *Penobscot* bank; which last mortgage was, prior to 1820, assigned to *Mr. Gray* and *Mr. Williams*, in the proportion of four fifths to *Gray*, and one fifth to *Williams*. *Gen. Crosby*, being unable to pay the mortgages, afterwards released his equity of redemption.

*January* 10, 1820, the parties divided that portion which had been mortgaged to the bank, and which they held in common ; and *Gray* made to *Williams* a deed of release and quitclaim of the demanded premises, with covenants that they were free of all incumbrances by him made, and of warranty against the grantor and his heirs, and all persons claiming under them ;—and *Williams* made a similar deed to *Gray* of the residue of the land.

The State taxes upon the whole township for the years 1812 to 1818 inclusive, amounting to $41,09 being wholly unpaid, it was sold by the sheriff of the county *January* 4, 1819, under a warrant from the treasurer, pursuant to the statute, to *Hill & McLaughlin*, they being the highest bidders, for $61,10, being the amount of the taxes and charges of sale ; and a deed was made to the purchasers, conveying the township to them and their heirs, subject to the right of the proprietors to redeem the land, by payment of the money at any time within two years.

*March* 13, 1820, an agent of *Mr. Gray* came to *Hill & McLaughlin* professedly to redeem the land ; and paid them the amount of their claim. Whereupon they executed a deed to *Gray*, prepared by the agent, by which they " sold, released and quitclaimed" to him all the right, title, interest and claim which they had to the township by virtue of their deed from the sheriff. Under this deed the tenant now claimed to hold the land.

*Orr* for the demandant, and *Greenleaf* for the tenant, submitted their arguments in writing, to the following effect.

Arguments for the demandant.

1. No title passed to the tenant in the *demandant's* land, by the deed of *Hill & McLaughlin* to him. The sheriff's deed to

them reserves a right of redemption to the proprietors of the land. This reservation is a substantive part of the deed, in its operation on the rights of the demandant. Of whom, by this reservation, was he to redeem his land ? Not of the assignee of *Hill & McLaughlin*, but of them personally, or their heirs. Otherwise, the owner of land might always be defeated of his right of redemption by a succession of assignments or releases, and thus be deprived of his land. The purchaser from the sheriff must therefore retain the capacity to release to the owner, till the time of redemption expires; and consequently none but the owner can redeem. It follows that by *Hill & McLaughlin's* deed to the tenant, no estate passed in the demandant's land.

2. If the joint right to redeem the whole tract sold by the sheriff, was not severed by the partition deeds of the parties, so that *Hill & McLaughlin* were obliged to release to each his share ; then their deed to *Gray* would operate as a confirmation of the demandant's title to an estate in fee under him. And such was the nature of the incumbrance that they were not obliged thus to release to the respective owners in parcels. And if either or both the parties had a right to tender the whole sum and demand a deed of release, then the demandant is entitled to the benefit of the redemption; for even an estate held by two joint purchasers under a disseisor, and of course any other joint right, would be confirmed by a deed of confirmation from the disseisee to one of them. *Co. Lit.* 297. Here the parties had a joint right to redeem the whole tract, and therefore a deed to one, discharging the incumbrance, shall avail the other; the party making the payment having a right to a contribution from the other for the money advanced.

3. But as between these parties, the deed of the tenant to the demandant, of *Jan.* 10, 1820, conveyed a several right of redemption. It is a release and conveyance of all his title and interest. Now the right of redemption existed at the time of the execution of the deed; and if so, then it passed, as fully as any other right in the land. The tenant is therefore estopped by the deed to say that he had no such right, or that he afterwards acquired it. And he is equally estopped by his covenant to warrant and defend to

the demandant the very title he now claims, against all persons claiming under him and his heirs.    *Co. Lit.* 47. (X)    4 *Com. Dig.* 85, *tit. Estoppel E.* 10.    *Trevivan v. Lawrence & al.* 1 *Salk.* 276.

Arguments for the tenant.

1. By the *Stat.* 1785, *ch.* 70, to which the authority of the sheriff is referred, he is to *sell the land,* and execute a deed to the purchaser and his *heirs and assigns,* saving to the proprietor a right of redemption; to whom, on payment of the money, the *land* is to be *re-conveyed* by the purchaser.    The alienation of the estate is involuntary, by operation of law; but the rights of the parties are the same as if the transaction were voluntary, and between themselves; in which case the purchaser would take a fee simple conditional; liable to be defeated on payment of the sum agreed.    In this latter case the purchaser might alien the estate at his pleasure, subject to the condition; such being the attribute of every fee simple.    And there is no difference, whether the estate be acquired by voluntary grant, or by force of the statute.    The owner, by suffering his land to be thus burthened, in effect mortgages it for the amount of the tax; and the difficulty of redeeming it after successive assignments, is no more than is incident to every mortgage.    The estate, therefore, which *Hill & McLaughlin* took was alienable, and of course it passed to their grantee.    *Rising v. Granger* 1 *Mass.* 47.    *Gilman v. Brown* 1 *Mason* 212—218.

2. It appears that the tenant owned at least one half the township in *severalty;* and yet the tax is upon the whole tract, in one entire sum.    Had this been a tax assessed by town officers in a gross sum upon a tract of land held in severalty by different owners, whose deeds were recorded, it would have been illegal; for in such case no one could relieve his own land, without paying the debt of his neighbor also.    The taxes in the present case being imposed by the sovereign power of the State, must be taken with reference to the acknowledged rights of the citizens in other and similar cases ; which can only be done by admitting each owner in severalty to redeem his own land by paying his proportion of the tax.    If therefore the tenant had been redeeming his

Williams v. Gray

own land only, he would have taken a deed of his own part of the tract. But as he took a regular conveyance of the whole, his intent obviously was to acquire the right of his grantors to the whole estate. The passage cited from *Co. Lit.* 297, only means that the release of the disseisee to one jointenant shall enure to both as *against him*; but not that it shall effect their rights as *against each other*.

3. If *Mr. Gray* stands in the place of *Hill & McLaughlin*, the demandant cannot have the land, on his own principles, without first tendering his proportion of the taxes. Had he done this, and a reconveyance been refused him, his remedy would have been plain by bill in equity, in which case the *real* merits of the contest would be opened, and both parties be compelled to do equity. For if the purchase from *Hill & McLaughlin* was a redemption of the land, it was so as to *them alone*. It still remained equitably charged with the lien in the hands of the tenant; who ought to be regarded in as favorable a light as an equitable mortgagee by deposit of title deeds;—9 *Ves.* 115. 2 *Ves. & Beame* 79, 83. *Russell v. Russell* 1 *Bro. Ch. Ca.* 270;—or as a surety who pays the debt of his principal, and takes an assignment of the debt, and of the mortgage which the principal had given to secure it. *Norton v. Soule* 2 *Greenl.* 341. See also *Davis v. Maynard* 9 *Mass.* 242. *Cary v. Prentiss* 7 *Mass.* 63. *Parsons v. Welles* 17 *Mass.* 419. *Clason & al. v. Morris* 10 *Johns.* 524.

As to the estoppel,—it must not work injustice. The doctrine is conceived to apply only to the cases where one having *no estate*, undertakes to convey,—or where one undertakes to convey a *greater estate* than he had at the time. The *universal* administration of the rule would work great mischief. As if A sells land to B, with warranty; and C, a creditor of B, extends his execution upon it, and thus acquires an absolute title; and afterwards sells it again to A; can B, claim it of A, by estoppel ? The reasonable limitation of the rule would seem to require that the intent of the parties at the time of the conveyance, should be carried into effect. Now their obvious intent, by the deeds of partition in the present case, was nothing more than to designate the portions which each should hold in severalty, and to protect each one against titles *then* subsisting in or derived from the other; leaving

rights unforeseen, and subsequently acquired, to their unrestrain-ed operation.

MELLEN C. J. at the adjourned session of this Court in *Cumberland*, in *April* 1825, delivered the opinion of the Court as follows.

For some time prior to *January* 10, 1820, the parties in this suit were tenants in common of the north half of the township in question; and on that day they came to a division; and *Gray*, by his deed of that date, sold and released all his right to the demanded premises (being *part* of said north half) to *Williams*; and *Williams* sold and released to *Gray* all his right to the residue of said north half.

This deed from *Gray* is a good title as against him; and unless he has since that time acquired a title *paramount* to this, and of which he has a legal right to avail himself in this action, the demandant is entitled to recover. Whether he has acquired such a title is the question. The facts in the case are few and simple.

A year before the division, viz. on the 4th of *January* 1819, the whole of said township was sold, pursuant to law, by the sheriff of the county, for the payment of the taxes which had been assessed thereon for the seven next preceding years. It was purchased by *Hill & McLaughlin* for $61 10; and the sheriff gave them a deed of it, reserving to the proprietors or owners the right of redeeming it within two years. On the 13th of *March* 1820, *Gray* paid the purchasers $69 11 by way of redeeming the property sold; and they thereupon gave him a deed, whereby they sold and released to him all their right in said township. On these facts the tenant grounds his defence. From a view of them it appears that as the township had been sold a year before the execution of the division deeds, *Gray* and *Williams*, at the time of making those deeds, had no right or title remaining in them but the right of redemption; and the right of redeeming the demanded premises was conveyed to and vested in *Williams* by virtue of *Gray's* deed of *Jan.* 10, 1820. What then was the effect of *Gray's* payment to *Hill & McLaughlin*, and of their deed to *Gray* ? The answer to this question will settle this cause.

It is not necessary in this cause to decide whether *Hill & McLaughlin* could, during the two years, sell the same land to a stranger, and thereby subject the original proprietors to the inconvenience and necessity of redeeming the lands of such stranger; the facts do not present this question.   Whatever *Gray* did was in the form of redeeming the lands; and the deed which he received of the purchasers, contains merely a release of their right, without any reservation of a right of redemption, as would probably have been the case had the conveyance been made to a stranger.   Nor need we decide the effect of such a deed.   We place the decision of the cause on another ground.

It is a well settled principle of law that if A sells with warranty to B, a piece of land to which he has no title ; and afterwards purchases a good title ; such title thus procured shall enure to the use and benefit of B ;—because A is estopped, by his deed to B, to demand the land of him, or deny his own right to convey what he undertook to convey to him.   *Co. Lit.* 47, *b;* and *note* 307.   *Fairtitle v. Gibbs* 2 *D. & E.* 171.   *Jackson v. Metcalf* 10 *Johns.* 91.   *McCracken v. Wright* 14 *Johns.* 193.   *Jackson v. Stevens* 16 *Johns.* 110.   And there are also several cases by which it is decided that although a deed contains no covenants of warranty, still the grantor shall never be permitted to aver that he had no title to the land at the time of conveyance, and thus to claim against his own deed, in consequence and in virtue of an after-acquired title.   To this point may be cited *Jackson v. Bull* 1 *Johns. Cases* 91, and *same v. Murray* 12 *Johns.* 201.   These cases seem not to have been decided on the ground of estoppel technically considered.   Perhaps, however, it is not necessary particularly to notice this distiction between the two classes of cases abovementioned, because the deed to *Williams* contains a special covenant of warranty on the part of *Gray*, against all persons claiming from, by or under him or his heirs.   This covenant must surely be as binding on him in this action as it would be if his heir or assignee was the defendant and the defence should succeed.   According to the true intent and spirit of his covenant, it must be construed to extend as well to his own acts, as to the claims of those claiming from, by or under him.   Should the defence in this action prevail, it must prevail in consequence of

*Gray's* own act in procuring the alleged title from *Hill & Mc-Laughlin.* Against this act and claim his covenant binds him ; and, therefore, according to all the authorities, he is now estopped to claim the demanded premises against his own deed to the demandant. We see no principles on which the defence can be supported. In redeeming the lands, *Gray* must be considered as the agent of *Williams,* so far as his interest extended. And if *Williams* has not already reimbursed the monies advanced by *Gray* for the purpose of redemption, he stands legally liable for the amount. For the present action is a ratification on the part of *Williams* of the act of *Gray* in redeeming the lands.

Let a default be entered, and judgment for the demandant.