East'n District.
*June,* 1824.

FORD'S CURATOR
*vs.*
FORD.

*FORD'S CURATOR* vs. *FORD.*

APPEAL from the court of the eighth district.

MARTIN, J. delivered the opinion of the court. The plaintiff alleges that the defendant's late husband, died in this state, wherein he was domiciliated, that she renounced the community, and the only child, the succession of the intestate, and he the plaintiff was appointed curator to the vacant estate—that the defendant detains from him sundry slaves, part of the estate, &c.

The answer denies the plaintiff's capacity of curator and his right to the slaves, if they were part of the estate; as they were not inventoried, it avers they are the defendant's property —that her late husband, an inhabitant of Louisiana, married her in the state of Mississippi, that the intention of the parties was to remove to and inhabit the former state, and to have their respective rights regulated by its laws, that before the celebration of the marriage, her intended husband conveyed the slaves to trustees for her benefit.

The plaintiff had judgment and the defendant appealed.

The plaintiff introduced his letter of curatorship, the renunciation of the defendant to the

*The matrimonial rights of the wife who marries with the intention of instant removal into an other state, must be governed by the laws of her intended domicil.*

*The want of recording a marriage contract, cannot be objected by the representative of the husband.*

community, and the child's, to the succession, and

It was admitted that the intestate died at his residence in Louisiana, leaving the defendant, his widow and a child ; that the deceased and the defendant lived together, without any separation of property having been made, till his death. The common law of England and statutes up to the declaration of independence, are the rules of decision in the state of Mississippi, unless altered by local laws.

It is admitted that the slaves, named in the petition, were in the intestate's possession, from the time they were brought to Louisiana, untill his death, and he received the avails of their labour during the marriage.

It is admitted that Cumming and Ramsey, obtained a judgment for $1108 46, which is unsatisfied, and Hagan and Miller one for $373 02 which is also unsatisfied.

Two notes of the intestate were also proved.

The defendant proved that the slaves were her property and in her possession, in the state of Mississippi, before her marriage with the intestate ; having brought them there from the state of Alabama, about one year before her marriage. They were not inventoried—the

East'n District.
June, 1824.

FORD'S CURA-
TOR.
vs.
FORD.

East'n District.
Jun. 1820.

FORD'S CURA-
TOR
vs.
FORD.

curator gave security for five thousand three hundred dollars only.

The intestate and defendant were married in the state of Mississippi in 1818. At that time the intestate had hired three of the slaves and taken them to Louisiana, and the rest were in her possession or that of her trustees. The intended husband had at the time a furnished house and farm in the state of Louisiana, and had sent a waggon to remove his intended wife's property to Louisiana. She had no house, but lived with her brother in the state of Mississippi, and hired her negroes out, she left the state of Mississippi for that of Louisiana, the day after the marriage, and had previously expressed her intention, to reside permanently in Louisiana. The negroes came to Louisiana, two or three days after the marriage.

Before the marriage the intended husband executed a deed of settlement for the said negroes, who were conveyed to trustees for her benefit.

The only question of law arising in this case is, whether the matrimonial rights of the wife, are to be regulated according to the laws of the place in which the marriage is contracted,

East'n District:
*June*, 1824.

FORD'S CURA-
TOR
*vs.*
FORD.

or those of the intended domicil and residence of the spouses.

The wife does not contract where she enters into matrimony, but where she, after the marriage, migrates or removes. *Mulier non agit ubi matrimonium contraxit, sed ubi ex matrimonio migravit, vel divertit, agit. Cujas, ad l.* 65, *Exigere dotem,* 164.

The place, where marriage is contracted, is not so much that where the ceremony is performed, as that where the parties expect to live and settle. *3 Dallas,* 374, 375, *in notis.*

When the husband and wife have different domicils, it is to the law of the husband's domicil, that the parties ought to have presumed to have submitted, because the wife, who by her marriage follows the husband's domicil, is presumed to have had in view, the law of that domicil, which by the marriage is to become hers. *Pothier, Comm. no.* 14.

The general rule is to attend to the law of the husband's domicil, rather than to that of the place in which the contract is entered into. *Lebrun, Comm. no.* 18.

*Exigere dotem mulier debet illic, ubi maritus domicilium habuit, non ubi instrumentum dotale conscriptum est,* ff. 5, 1, 65.

VOL. II. (N. S. 73

East'n District.
*June,* 1824.

Ford's Cura-
TOR
*vs.*
Ford.

When a contract is made in reference to another country where it is to be executed, it must be governed by the laws of the place, where it is to have its effect. 2 *Burr.* 1078.

Gregorio Lopez, however, in one of his notes on *Partida,* 4, 11, 24—1 *Mor. and Car.* 432, appears to understand the principle which forcibly results from these authorities, with some exceptions.

We think however, that it may safely laid down as a principle that the matrimonial rights of a wife, who, as in the present case, marries with the intention of an instant removal, for residence in another state, are to be regulated by the laws of her intended domicil, when no marriage contract is made, or one without any provision in this respect.

It is however contended that in the present case, the parties had in view the laws of the state of Mississippi, in which the marriage was celebrated; because a settlement deed was executed, with the view of preventing the ordinary rights of the husband from attaching.

This settlement is evidence of a desire of the parties to preserve the wife's property and the slaves, from the ordinary effect of the laws of the state of Mississippi.

East'nDistrict.
June, 1824.

FORD's CURA-
TOR
—vs.
FORD.

It is urged that this settlement is void, be-
cause the husband had no property in the slaves
at the time of its execution—because there was
no tradition—because it was not recorded in
this state.

We think that the settlement had the effect
to prevent the husband from availing himself
of any title, he might afterwards acquire, to de-
stroy that which he had thus attempted to
confer.    12 *Johns.* 201, 1 *Johnson's cases*, 90.

The negroes were in the possession of the
wife, for whose benefit the settlement was
made, and this possession was not disturbed,—
they came on from the Mississippi to Louisi-
ana  after the marriage, and it does not appear
the husband possessed or interfered with them,
until after marriage, and  his interference ap-
pears only that of a husband on the parapher-
nal property.

The  neglect  to record  does not affect the
rights of the *parties* to the settlement, and
creditors  only  can  avail  themselves  of it.
A  curator of a  vacant  estate,  represents the
heirs—they cannot set up the  neglect  to re-
cord.

We are of opinion that  the husband never
acquired any right to the slaves, and they nev-

East'n District.
*June*, 1824.

FORD'S CURA-
TOR
*vs.*
FORD.

er ceased to be the wife's or her trustees—the plaintiff therefore is without interest to claim them.

It is therefore ordered, adjudged and decreed that the judgment of the district court be avoided, annulled and reversed, and that there be judgment for the defendant, with costs in both courts.