## Brown and others *vs.* Galley and others.

Ejectment lies by the owner in fee against one who has exclusively appropriated a part of a public street or highway to his own private use.

In such a suit, evidence of a parol license from the owner to occupy the premises is inadmissible, such agreement being within the statute of frauds.

B., one of several tenants in common, gave a written license, so far as his then existing interest went, for the erection of a public market house on the premises held in common, the other tenants in common dissenting. M., another of the tenants in common, subsequently conveyed to B., together with other premises, those on which the market house was erected, "subject to all the legal rights of the public in, to and over the same." *Held*, in ejectment by B. and others, that he was not estopped by the license which he had previously granted, from setting up his after acquired title under the conveyance from M.

*It seems*, had the instrument from B. purported to give a complete title, instead of being a mere license without any covenant express or implied, that it would have been otherwise.

EJECTMENT for part of a street in the city of Rochester. It was admitted that the premises were originally part of town lot, No. 48, in township No. 1, in what was called the "twenty thousand acre tract," and that in 1813 Thomas Mumford was owner of one undivided half of said lot, and that Mathew Brown, Jr., and David Brown, two of the plaintiffs in this suit, and one Francis Brown, now deceased, were owners in common of the other. That partition was made in that year between the said Mumford and the said Browns, and mutual deeds exchanged; that the lot was subdivided, allotted and numbered on a map of the same, to which reference was had in said partition deeds for the number and description of the several lots as conveyed. That partition was not made of the premises in question, but the same was dedicated by said map as a public street marked thereon as "Court street," now called "Brown street."

That in the year 1821, Thomas Mumford coveyed by deed all his interest in the premises claimed to William W. Mumford, another of the plaintiffs. That in the year 1824, Francis Brown died, having devised all his interest to his sons

Francis and Daniel, plaintiffs in the suit, and to his wife Jane, who shortly after conveyed her interest to H. F. Penfield, another plaintiff in the suit.

That the premises were used as such street or highway, from the time of said partition until the year 1828, when a building was erected thereon by the trustees of the village of Rochester for a public market.

The defendants were in occupation of part of said building at the commencement of this suit, under a lease from the Mayor of the city of Rochester.

The plaintiffs rested, and defendants moved for a nonsuit on the ground that the action would not lie to recover possession of premises dedicated as a public street or highway, and occupied as such. The motion was overruled.

The counsel for defendants then proposed to prove a parol license from the plaintiffs, previous to the erection of said building, to erect the same upon said street instead of upon the adjoining lots, which had been dedicated by said partition map to the public for markets, and to use said market lots or part of same, for highways or streets, which was overruled on the ground that parol evidence was inadmissible to defeat the plaintiffs' title.

It was then proved that in the year 1828, Mathew and David Brown (plaintiffs) gave a written consent to the trustees to erect the market building on its present site, and that William W. Mumford refused to execute the same.

The defendants further gave in evidence a quit claim deed from William W. Mumford to Mathew Brown, dated May 6th, 1840, conveying with other lands the premises in question, *subject to all the legal rights of the public in, to and over the same.*

The counsel for the defendants insisted that this deed would enure to the benefit of the trustees, and prevent Mathew Brown from recovering a moiety of the premises under the circumstances of his previous assent to the erection of the market. Which view was denied by the judge.

The judge charged that Mathew Brown was entitled to recover, under the deed from Mumford to him, one moiety

of the premises, and the plaintiffs Penfield, Francis and Daniel, three-eighteenths of the same; that as to the residue, the jury should find for the defendants. Defendants move for a new trial on a bill of exceptions.

*By the Court,* NELSON, Ch. J. 1. The case of *Goodtitle* ex dem. *Chester* v. *Alker and Elmer* (1 Burr., 133), and of *Jackson* v. *Hatheway* (15 Johns., 447), are direct authorities in favor of the owner of the fee to sustain ejectment against one who has exclusively appropriated a part of a public street or highway to his own private use.

The former case was twice argued in the king's bench. Though no doubt seems to have been entertained by the judges in respect to this particular point; the fact, however, proves that it was decided after having been fully discussed and considered. I do not find that the point has ever been doubted in England since that case; but it is sufficient for us that it has been expressly affirmed in this court in the case to which I have refered. (See also 2 Johns., 363; 6 Mass., 456; 1 Conn., 103, 132, per Swift, J.; Selw. N. P. 518; Saund. Pl. and Ev., 447.)

2. The learned judge was right in excluding the parol evidence offered of the license of the owners of the fee for the erection of the market, and occupation of the premises for the use of the same; such agreement being void within the statute of frauds. It contemplated a permanent use and occupation of the land, which in *Mumford* v. *Whitney* (15 Wend., 380) was, after a very full and learned examination of the question by Ch. J. Savage, held to be an interest in the land itself, coming clearly within the statute.

The question there was, whether a license to abut and place the dam of the defendant thrown across the Genesee river upon land of the plaintiff was valid and binding, without being reduced to writing; a question which, in principle, can not be distinguished from the one before us.

It is supposed that the deed from Mumford to M. Brown, dated May 6, 1840, conveying the premises in question, *subject to all the legal rights of the public in, to and over the*

*same,* would enure to the benefit of the city by operation of his (Brown's) previous written consent to the corporate authorities to erect the market house in question.

If that instrument from Brown to the trustees had purported to vest in them a complete and perfect interest in the premises, so far as was necessary for the purpose of erecting and maintaining the market house upon the same, he might, perhaps, have been estopped from setting up, in derogation of such privilege, an after acquired title. (1 Johns. Cas., 90; 12 Johns., 201.)

But the difficulty here is, at the time of the license Mathew owned only one-sixth of the premises, and the instrument purported a consent for himself and to the extent of his interest; nothing more. It does not profess or assume to grant a complete and absolute right to the easement claimed, nor is it pretended that there was any covenant, express or implied, that he had the right, or full power to make such a grant; it was simply a license, so far as his then existing interest was concerned, to use and occupy the premises for the purposes declared.

His assertion of the title, therefore, subsequently acquired from Mumford, who refused to give consent to the trustees together with the other owners, at the time, is not inconsistent with the previous grant of easement. He takes the place of Mumford unembarrassed, possessed of all his rights and entitled to all his remedies.

New trial denied.