Mr. Justice Clayton
delivered the opinion of the court.
This bill was filed by Eekford to remove clouds and doubts from his title to a lot of ground in the town of Columbus. He claims by purchase at a sale under a deed of trust, executed by Ewing F. Calhoun on the 26th of August, 1839. The sale took place on the 25th of July, 1840.
. The titles which are opposed to his emanate, likewise, from E. F. Calhoun, or from other sources, which seem to have been explored after the purchase of Eekford, in order to defeat his title. A more complicated state of facts is rarely exhibited.
The bill charges that Ewing F. Calhoun had title and possession when the deed of trust was made; and that he, by himself or his agents, continued in possession thereafter, up to the time of filing the bill.
It states that the titles interposed to embarrass that of the *31 complainant, are three. First, a deed -from the sheriff of Lowndes comity, dated 16th March, 1840, which recites that the lots were sold as the property of John J. Humphries, and purchased by Abram S. Humphries. It alleges, that said John J. Hum-phries had no title to the lot, either at the time of the judgment or of the sale, and that Abram S. Humphries bought for the owners and holders of the several lots embraced in the sale. Second, a deed to A. J. Calhoun, made by the sheriff under a sale on the 4th of October, 1841, by virtue of an execution against E. F. Calhoun. Third, a deed from the president and trustees of the Franklin Academy to Charles McClaran, on account of a sale of the lots for non-payment of rent, reserved upon a lease of the lots for a long term of years, and a conveyance by McClaran to Lydia E. Calhoun, the wife of E. F. Calhoun. This mode of forfeiture and sale of the lots was adopted to get rid of the old judgment against John J. Humphries, who once owned the lots, and McClaran’s quitclaim deed to Mrs. Calhoun was intended for the benefit of the true owner. Abram S. Humphries, who purchased at the execution' sale against John J. Humphries, likewise conveyed to Mrs. Calhoun. The bill prays that these titles be set aside.
To this, the original bill, Taylor was not a party; but he was afterwards upon his petition admitted as a party, and brought his rights before the court. It will be well to confine our attention at first to the original parties. There was first a demurrer, upon the overruling of which an answer was filed.
The answer of Mrs. Calhoun admits the deed of trust of E. F. Calhoun, and the sale, under it to Eckford, but denies that E. F. Calhoun had either possession of the lot or title to it, when the deed of trust was executed. It alleges, that she was in possession, claiming title in her own right by virtue of the deed of Humphries, bearing date the 1st day of March, 1843; denies that complainant obtained any title by his purchase, or has any at this day, and asserts that the title she derived from Humphries is valid. It also denies, that A. J. Calhoun purchased for the benefit of E. F. Calhoun, but asserts, that A. J. Calhoun has no title. It farther states, that the lots were forfeited to the Frank *32 lin Academy for non-payment of rent, and that a new lease was executed by the trustees to McGlaran, who made a quitclaim deed to her for her part of the lots, and for which she paid her proportion of the rent. This answer is made a cross-bill, sets out these several deeds, and says that another sale, under a judgment of the Commercial Bank of Columbus against E. F. Calhoun, was made, at 'which P. B. Calhoun, became the purchaser and conveyed to her. Neither the date of this sale by the sheriff, nor that of the deed is given. The deed of P. B. Calhoun to Mrs. Calhoun bears date the 25th of March, 1845, and was filed at the same time that he filed his answer as administrator of E. F. Calhoun, deceased.
The answer of E. F. Calhoun, filed in his lifetime, states that at the time of the sale of the premises to the complainant, under the deed of trust, the lot in question was in the adverse possession of his wife, L..E. Calhoun. He admits that after the purchase he was left in possession, with the understanding that he might redeem the lot, or sell it to a third person, if he could do so on better terms. He states that he believed he had a good title when he executed the deed of trust, but now doubts it, and as it is a question of law, refers its decision to the court.
The lot was conveyed in 1837 by James Cameron to E. F. Calhoun, and was also conveyed to him in 1839 by Wm. Dousing. It is also in proof that he was in possession previous to, and at the time, when the deed of trust was executed.
The answer of Mrs. Calhoun was made a cross-bill, and in his answer to this, Eckford alleges that John J. Humphries had sold and assigned his interest in the lot more than twenty years previously; that the assignment had not been recorded, and might be lost, but that the possession .of E. F. Calhoun was notice of his title. Humphries himself proves that as early as 1825 he sold and assigned his interest in the premises, and delivered possession to his vendee.
The bill states that, at the request of E. F. Calhoun, the complainant gave, him the privilege of redeeming the lot, or of selling it for a better price, and left him in possession. The answers of both Calhoun and wife admit this agreement, but *33 allege that the complainant, when requested,' refused to comply with it. E. P. Calhoun states that he sold the lot for $6000, nearly four thousand more than Eckford gave, and that when he applied to the complainant to comply with the agreement, he refused to do so, and then for the first time took a deed from the trustee, bearing date 2d March, 1841. E. F. Calhoun took offence at this refusal, and when his plan of re-sale was defeated difficulties immediately began to spring up in regard to the title of Eckford.
This brings us to the consideration of the claims set up in opposition to his.
The sale of the lot as the property of J. J. Humphries, passed no title. He had sold and conveyed his interest many years before the judgment was rendered. The lien of the judgment could not extend beyond the actual interest of the debtor. Dunlap v. Burnett, 5 S. & M. 710. The possession of his vendees was notice of their right, in the absence of the registration of his conveyance. Dixon v. Lacoste, 1 S. & M. 70. The failure to record the lease or the assignment could have no effect upon the title of Eckford, in favor of a purchaser with notice.
This was leasehold property, and Humphries states that Morgan, his vendee, was substituted as tenant in his place. The purchaser under a judgment, rendered after this transfer and substitution, with notice of the title of the tenant in possession, could obtain no title.
Moreover the purchaser at the sheriff’s sale of this title, states, that he bought not for himself, but for the benefit of the true owner, and with no intention to set up title in himself. He offered to convey to E. F. Calhoun, believing him to be the owner, and conveyed to Mrs. Calhoun by the request of A. J. Calhoun. This title cannot now be successfully opposed to the prior vendee of E. F. Calhoun. Neither would it be just to compel Eckford to refund what was paid on account of this sale and purchase, because the judgment constituted no lien as against him.
The next cloud is the deed of the sheriff to A. J. Calhoun, *34 founded upon an execution sale made in October, 1841, under a judgment against E. F. Calhoun, older 'in date than the deed of trust. At this sale, a lot worth, according to some of the, testimony, six thousand dollars, was sold for the trivial sum of two dollars. A consideration so inadequate “shocks the conscience,” and impresses the mind at once with the feeling of injustice. The purchase was made by A. J. Calhoun, as the agent of Mrs. Calhoun, according to her own assertion, and for her benefit. The execution was not issued by the plaintiff, nor by his direction, nor was the levy upon the lot made by his order. The gross inadequacy of the price, the relation of the parties, and the numerous and various efforts made to defeat the title of Eckford, furnish the most convincing evidence of fraudulent and improper practices. Whether great inadequacy of price is of itself proof of fraud, we need not now decide; in connection with other suspicious circumstances, it is of much weight in determining the character of the transaction. 2 Rob. Prac. 14; 1 Story, Eq. Jur. 250.
But in this case, E. F. Calhoun stood in the attitude of a tenant to Eckford, at the time of this purchase of A. J. Calhoun. Moreover he had conveyed the lot to the trustee by words which, under our statute, operate an implied warranty of title; and any title which he might subsequently obtain, would enure to the benefit of his vendee. Jackson v. Murray, 12 Johns. 201; Jackson v. Stevens, 13 Johns. 316; Peck’s R. 24.
A. J. Calhoun was nominally the purchaser, but Mrs. Calhoun alleges that he bought for her benefit. As her husband would not, under the circumstances, be permitted to buy another title to defeat the effect of his own conveyance, whilst sustaining the relation of tenant to the complainant, so neither would the wife. See Hardeman v. Cowan, 10 S. & M. 486. This sale and this conveyance should not, therefore, be permitted to stand in the way of the complainant.
We come next to the deed of McClaran. The lot in dispute was one of a block, which was divided into several lots. McClaran owned some of these, and supposed that E. F. Calhoun was the owner of the one in question. In order to get rid *35 of some apprehended difficulty as to the title, he proposed to E. P. Calhoun, that they should fail to pay the ground rent on the stipulated day, suffer the lease thereby to become forfeited, and afterwards procure a new lease discharged of all former incum-brances and difficulties. This proposition was agreed to and carried out, and afterwards McClaran, at the request of E. F. Calhoun, conveyed to his wife. This deed is now opposed to the complainant. It is liable to the same observations made in regard to the deed of Humphries. It was a part of the scheme of E. F. Calhoun to defeat his own conveyance, and cannot be permitted to stand in a court of'equity.
The answer of Mrs. Calhoun, which is also made a cross-bill, sets up another claim, which was not obtained till after filing the original bill. That was a sheriff’s deed, founded on an execution sale under a judgment in favor of the Commercial Bank of Columbus against E. F. Calhoun. The property was sold under this execution in 1845, was purchased by P. B. Calhoun, and by him conveyed to Mrs. Calhoun for the consideration of seventy dollars.
It is in proof by two witnesses, that E. F. Calhoun had the control of this judgment during his life. At one time execution was issued and delivered to him. Afterwards he caused it to be assigned to Butterworth as security for money borrowed of him. After its repayment, he caused the judgment to be transferred to Christian, who used it to sell some property, and to secure the titles to himself, and then considered that he had no farther interest in the judgment. All this was accomplished by arrangement with E. F. Calhoun. P. B. Calhoun was the administrator of E. F. Calhoun, and was notified at the time of his purchase, by H. S. Taylor, that the execution was satisfied.
These facts warrant the conclusion, that the judgment had been discharged, and was kept open by E. F. Calhoun to serve his own purposes. A title acquired under it by his administrator, and then by his widow, with at least constructive notice, and during the pendency of this suit,, cannot prevail against the complainant. This disposes of the claims of Mrs. Calhoun. Banks v. Evans, 10 S. & M. 35.
*36 The title of Taylor rests upon the validity of the purchase made by A. J. Calhoun under the execution of Symons and Trotter, at which the lot was sold for two dollars, as already stated. Taylor afterwards bought the lot at execution sale against A. J. Calhoun. Mrs. Calhoun also claims title under the same sale, and her interest has already been the subject of remark.
It will be borne in mind that Taylor was the purchaser of the interest of A. J. Calhoun, at execution sale; if Calhoun had no title, Taylor acquired none. The evidence of practice and design, combined with the total inadequacy of the consideration, make it impossible for his purchase to stand. The derivative purchaser in this instance stands on no better ground.
The difficulties seem all to have grown out of efforts of E. F. Calhoun and his family, to defeat the effects of a deed which he had previously made.
The decree is affirmed.