Nov. Term,
1856.

DEAN and Others *v.* DOE, on the demise of SEASE's Heirs.

DEAN | 8 475|
v. | |44 69|
Ejectment. The facts were agreed upon as follows: *A.* conveyed lands . DOE.
to *B.*, covenanting that the premises were free from all right of dower,
and all other incumbrances whatever; that they should for ever there-
after be and remain, &c.; and that he and his heirs, &c., would war-
rant and defend against all persons claiming or to claim the same.
There was no covenant of seizin, or of the right to sell and convey.
*B.* took possession, and afterwards conveyed to *C.* in fee, who also
took possession, and afterwards, and before the commencement of this
suit, died intestate. His heirs are the lessors of the plaintiff. On the
3d of *September*, 1832; *A.* died intestate and insolvent, leaving an only
daughter his heir, who took nothing from his estate. He was never at
any time seized of any estate in the premises conveyed; but before
the date of the deed from *A.* to *B.*, *A.'s* father was seized thereof in
fee, and he continued so seized until *he* died intestate on the first of
*September*, 1835. The father left five heirs,—the wife of the appellant,
three other children, and *A.'s* daughter, as representing her father,—
each inheriting an undivided fifth of the land described in *A.'s* deed.
The appellant and others have all the title to the four-fifths which de-
scended to the children, and also to the fifth which descended to the
granddaughter, unless she, and they as her assignees, are bound and
estopped by the deed of her father. *Held*, STUART, J. dissenting, that
the doctrine in *Case* v. *Wildridge*, 4 Ind. R. 51, applies; that *A.'s* daugh-
ter inherits directly from her grandfather, and is not affected by the
acts of her father, who died without seizin, and before descent cast.

APPEAL from the *Floyd* Circuit Court.

STUART, J.—Ejectment for a tract of land in *Floyd*
county. The cause was submitted to the Court on an
agreed state of facts. Finding and judgment for the
plaintiff. *Dean* and others appeal.

Wednesday,
January 21,
1857.

A bill of exceptions taken upon the motion for a new
trial being overruled, sets out the agreed state of facts
which was passed upon as evidence.

The question raised involves the inquiry of the ope-
ration of covenants of title by way of estoppel. In
order to a proper understanding of the shade in which
the question is presented, it will be necessary to state

Judge STUART examines the subject of the operation of covenants
for title by way of estoppel, as involved in this case, fully and with much
learning; but as his opinion is a dissenting one—the majority of the
Court differing with him—his holdings are not embraced in the syllabus.

the agreed facts in full. "On the 13th of *June*, 1829, *Rezin Haines* made, sealed, and delivered to *Jacob Floor*, a deed of the land in dispute, which is in the words and figures following, viz.: 'This indenture, made this 13th day of *June*, &c., between *Rezin Haines* of, &c., of the first part, and *Jacob Floor* of, &c., of the second part, witnesseth, that *Rezin Haines* of the first part, for and in consideration of 438 dollars, in hand paid, the receipt of which is hereby acknowledged, hath granted, &c., and doth by these presents grant, &c., unto *Jacob Floor*, his heirs and assigns for ever, all that certain lot or parcel of land, &c., (describing it,) to have and to hold said lot or parcel of land, with all the appurtenances thereto belonging, unto the said *Jacob Floor*, his heirs and assigns for ever, and to and for no other use, intent, or purpose whatever. And the said *Haines* doth covenant and agree with said *Floor* as aforesaid, that the premises hereby bargained and sold now are and for ever hereafter shall be and remain, free and clear of all right and title of dower, and all other incumbrances whatsoever; and the said *Rezin* will, and his heirs, executors, and administrators shall, warrant and for ever defend the said parcel of land, with all the appurtenances, unto the said *Jacob Floor*, his heirs and assigns, against all and every person or persons lawfully claiming or to claim the same.' "

The deed is duly sealed, acknowledged, &c. The agreement proceeds:

"*Floor* took possession of said lands, and afterwards conveyed all his title thereto to *George Sease* in fee, who also took possession, and afterwards, and before the commencement of this suit, died intestate, and the lessors of the plaintiffs are his heirs. On the 3d of *September*, 1832, *Rezin Haines* died intestate, leaving *Margaret R. Haines*, his only child and heir. He died insolvent, and his daughter and heir took nothing from him by descent or distribution; and he was not at any time during his life seized of any estate in said lands. Before the date of said deed of *Rezin Haines* to *Floor*, *Benjamin Haines*

was seized of said lands in fee simple, and he continued so seized of the same until he died intestate on the 1st of *September*, 1835. Said *Benjamin Haines* left *Rebecca Haines*, wife of *Dean*, and three other children, and said *Margaret*, his granddaughter, his heirs, each inheriting one undivided fifth part of the lands described in the deed—the granddaughter as representing her father, *Rezin Haines*, son of the said *Benjamin*. The defendants, *Dean* and others, have all the title to the undivided four-fifths which descended to the children, and also that which descended to the granddaughter unless she and the defendants as her assignees are bound and estopped by the deed of her father *Rezin*."

This was all the evidence. And the only question is, Do the covenants of warranty in *Rezin Haines's* deed, estop his said daughter and her assignees in such manner as to enable the lessors of the plaintiff to maintain this action?

Though the deed is not literally copied, every material part is set out. Two other persons join with *Haines* in the deed; but as the record does not disclose their title or connection with the case, it was deemed unnecessary to quote the deed with their names.

There is some obscurity in the statement as to possession. Perhaps it can be reconciled by inference, viz., that as *Benjamin* died seized, the possession of *Floor*, and of his grantee, *Sease*, and then of the defendants *Dean* and others, followed each other in that succession. Had the dates been supplied it would have removed the obscurity.

*Sease's* heirs contend that *Margaret*, and those claiming under her are bound and estopped by the covenant of warranty of her father.

*Dean* and others contend that the inheritance being cast directly from the grandfather, and she receiving no assets from her father's estate, *Margaret* could not be sued upon the covenants in the deed, nor is she estopped by them. That it being expressly admitted in the record that *Rezin Haines* had no title, then it follows

that *Floor* and the lessors of the plaintiffs have derived none from him.

We are referred to *Wheelock* v. *Henshaw*, 19 Pick. 341, as a case in point conclusive against the operation of the deed by way of estoppel. The facts in that case were these. By deed with covenants of seizin and general warranty, *Thayer* conveyed to *Henshaw* the right to draw from a mill-pond the surplus water over six feet. Concurrently therewith *Henshaw* executed a mortgage to *Thayer* with like covenants, which came to the hands of the plaintiff by assignment. At the date of this deed, *Thayer* owing to the prior rights of others, could not raise his dam over six feet. Consequently there was no surplus water, and nothing conveyed by the deed or reconveyed by the mortgage. It was held that as *Henshaw* received no title by the deed to the surplus water, nothing passed by the mortgage; that this was available as a defense, and that it was estoppel against estoppel.

But this case has no analogy to that at bar. Here is no conflict of estoppels.

The first inquiry is, What covenants does the deed of *Rezin Haines* contain? and the second, What is the effect of these covenants?

1. *Haines* covenants that the premises are free from all right of dower, and all other incumbrances whatever; that they shall forever thereafter be and remain, &c.; and that he and his heirs, &c., shall warrant and defend against all persons lawfully claiming or to claim the same. These are in substance the express covenants.

It will be perceived that the deed is not a mere quitclaim; so that the doctrine governing that class of cases does not apply. Nor does it contain full covenants; for example there is no express covenant of seizin or right to sell and convey. And it is admitted in the agreed state of facts that the grantor, *Rezin Haines*, never was seized.

2. What, then, is the legal effect of this deed on *Margaret* and her assigns?

The doctrine of estoppel, ancient and modern, is fully investigated in the notes, to the *Duchess of King-ston's case*. 2. Smith's Leading Cases, 436. This note is admitted to be the basis of the 9th chapter of "Rawle on Covenants," embracing the same subject in its application to modern conveyances, and citing the latest authorities. Rawle, 400, note. A few only of the reported cases there referred to, will suffice to show the application of the doctrine of estoppel to the case at bar; though there is great diversity of ruling on the question.

An estoppel is defined to be, where a man is concluded by his own act or acceptance to say the truth. Notwithstanding this unpromising definition of estoppel it is in the highest degree reasonable and just. It is wise to provide some means by which a man may be concluded, not from asserting the truth, but from asserting that to be false which he had caused to be credited as truth. 2 Smith, *supra*. Estoppels are said to be odious. But the truth is, says *Smith*, that the courts have, for some time, been favorable to the doctrine of estoppel—hostile to its technicality. 2 Lead. Cas. 460. It is only when used to entrap by formal statements and admissions, looked upon as unimportant when made, and by which no one was ever deceived or induced to alter his position, that estoppels are still, as formerly, odious. *Id*.

The legal effect of the covenants in the deed before us is to be considered.

The admitted fact that *Rezin Haines* was never seized of any estate in the lands he undertook to convey, and in this connection, the absence of any express covenant of seizin, would be material if the deed conveyed only the "right, title, and interest," of the grantor. For in that case the warranty would be only co-extensive with the grant. And having no title at the date of the conveyance, his warranty was inoperative. Such warranty would not work an estoppel or rebutter in case of any after-acquired title. *Jackson* v. *Hubble*, 1 Cow. 613.—

*Jackson* v. *Waldron*, 13 Wend. 178.—*Edwards* v. *Varick*, 5 Denio, 665.—*Blanchard* v. *Brooks*, 12 Pick. 67.—*Comstock* v. *Smith*, 13 *id*. 116. The same doctrine is re-affirmed in *Miller* v. *Ewing*, 6 Cush. 34. In this latter case the Court say that the covenant is a restricted one. He grants all the right and title he has in the premises. The covenant is co-extensive with the grant. He agrees to warrant the title granted and nothing more. But in *Haines's* deed the grant is general. It is not a grant of his right and title at the date of the conveyance, but of all right and title, present and expectant. Thus, the grant covering any future interest he might acquire, the covenants are co-extensive with the grant. Both clearly cover any expectancy he might have in case of the death of *Benjamin Haines.*

This position is further illustrated by the case of *Trull* v. *Eastman*, 3 Met. 121. There, the deed was a grant of all the estate or interest which the grantor had, or which might come to him by will or heirship, so that neither he nor his heirs, &c., should afterwards claim, &c. It was held that the interest conveyed was an expectancy; it was a conveyance of a future interest to be acquired; and the warranty being co-extensive with the grant, estopped the grantor after the estate accrued, from demanding it.

That, it will be seen, was only a conveyance of his interest, present and future. Much more will the general conveyance and corresponding warranty estop *Haines*, and all claiming through him, or by any right derived from him, from claiming the land conveyed to *Floor*.

Had the *Haines* deed purported to convey only the interest which the grantor had at the date of the grant, it would have fallen within the rule in *Blanchard* v. *Brooks, supra,* and the warranty would not have worked an estoppel as to any after-acquired title.

But there is another question affecting the right of the lessors of the plaintiff to recover in this form of action. Rawle on Covenants says, "There are two principles on which most of the cases of this class can be

founded with entire accuracy.   One is, that the covenant of warranty operates as a personal rebutter merely, and (for the purpose of avoiding circuity of action) preventing the grantor and his heirs from setting up the after-acquired estate, which equity would compel them to convey to the prior grantee.  'The other is, that the effect of the covenant of warranty is as if a particular recital or averment had been been introduced; and that the grantor was, therefore, estopped by his deed from denying its efficacy.   Neither of these grounds, however, would give to the rebutter or estoppel the effect of actually transferring the after-acquired title.  Rawle, 422.

It is elsewhere shown by *Rawle*, that to give to an estoppel the operation of actually passing an estate, one of several things is essential.   Either that the mode of assurance was a feoffment, a fine, a common recovery, or a lease.   These modes of assurance were the only ones by which an after-acquired title passed, by operation of law, under the doctrine of estoppel.   But it seems a grant or a release had not that effect.   Our modern conveyances, passing only the estate of the party, have no greater efficacy, by way of estoppel, than the common-law grant or release.   Rawle, 405.—2 Smith's Lead. Cas. 557, top paging.

It is well settled, says *Smith*, that although a conveyance must fail of effect at law, unless the estate to be conveyed is vested at the time the deed is executed, it will yet be enforced in equity as an executory agreement to convey, whenever the intention of the parties is apparent, and sustained by a sufficient consideration.   Thus, the conveyance of a mere possibility of interest in rent, a covenant to stand seized of land in which the grantor has a contingent or executory use, or an agreement by expectant heirs to divide the estate of an ancestor, and, on equally strong reason, an absolute deed, will be sustained in chancery and made effectual by decree, as soon as the interest intended to be conveyed, has vested in the grantor.   And the annotator cites numerous au-

thorities in support of this position.   2 Lead. Cas. 560,
561, top paging.

There was, therefore, two effects attached to an estop-
pel, according to the assurance used.   The one estopped
or rebutted the party from alleging any thing contrary
to his deed.   The other, if the assurance employed was
a fine, feoffment, or lease, actually conveyed the estate.

Some *American* cases give both effects to the covenant of
warranty in modern conveyances—holding that to give
full effect to the estoppel, it must operate to pass the title.
*Jackson* v. *Bull*, 1 Johns. Cas. 81; *Jackson* v. *Murray*,
12 Johns. 201; and many others.   But they have all been
overruled or doubted, and the distinction above indicated
is clearly settled.

I am, therefore, of opinion that the estoppel in this
case does not operate to pass the title, but merely by
way of rebutter.   Admitting that *Haines* and his heirs
are estopped, by his deed to *Floor*, from asserting title,—
so that if they brought ejectment, that deed could be set
up in defense by way of estoppel,—that will not aid the
lessors of the plaintiff here.   For that deed will not en-
able *Floor*, or his assigns, to maintain ejectment against
the heirs of *Haines*.   The doctrine so clearly deducible
from the modern authorities comes in to defeat such ac-
tion also.   The deed to *Floor*, while it estops the grantor
and his heirs, is not efficient to pass the legal title.   It
gives the grantee the right to apply to a court of equity
for a legal title, but does not of itself pass that title.

Hence, the remedy of *Floor* and his assigns, under the
old system, which prevailed when the cause was tried
below, was not at law but in equity.   They had only an
equitable title.   The lessor of the plaintiff must have a
legal title.   *Jared* v. *Goodtitle*, 1 Blackf. 29.   Conse-
quently, *Sease's* heirs cannot maintain this action.

I am, therefore, of opinion that the judgment below
should be reversed.

The majority of the Court hold otherwise.   They
hold that the doctrine in *Case* v. *Wildridge*, 4 Ind. R. 51,

applies; that *Margaret* inherits directly from her grand-father, and is not affected by the acts of her father, who died without seizin, and before descent cast. The majority of the Court are, therefore, of opinion that the judgment below is correct.

*Per Curiam.*—The judgment is affirmed with costs.

*R. Crawford*, for the appellants (1).

*J. Collins* and *T. L. Collins*, for the appellee (2).