Childs, J.
From the papers submitted on this motion it appears that an order for the examination of Bertha E. Becker, the judgment debtor herein, in proceedings supplementary to execu *323 tion, was duly made on the 19th day of September, 1901, by the county judge of Cattaraugus county, and thereafter and on the twentieth day of September, then instant duly served upon the said judgment debtor, which order contained the usual provisions forbidding the judgment debtor to transfer, dispose of or in any manner interfere with any property belonging to or in which she has any interest.
Before the service of this order the judgment debtor had placed one thousand two hundred dollars, in money, in the hands of one A. E. Darrow. The examination of the judgment debtor was commenced on the 11th day of October, 1901, and thereafter continued from time to time by adjournment. On the 16th day of October, 1901, the judgment creditors applied to the county judge for an order requiring the judgment debtor to show cause why she should not he adjudged guilty of contempt of court for paying out and obtaining possession of the moneys so in the hands of A. E. Darrow.
An order to show cause in accordance with such application was made returnable on the 21st day of October, 1901, upon which last-mentioned day, and solely upon the said affidavit of Henry P. Kevins and the affidavits of Bertha E. Becker, Louis W. Becker and Berlin Becker, no other papers being before the county judge and no other proceedings having been taken, the order now sought to be vacated was made by the county judge. An examination of the affidavits discloses without controversy the following facts: Previous to the service of the order for the examination of the judgment debtor, L. W. Becker, her husband, had been arrested and was then confined in the county jail of Cattaraugus county upon a body execution. The judgment debtor procured said A. E. Darrow to become the bondsman for said Becker, entitling him to the liberties of the jail. For the purpose of securing the aid of Darrow, as stated, the judgment debtor deposited with him the sum of one thousand two hundred dollars in money. One thousand dollars of this sum had been placed in the hands of the judgment debtor by her mother, Mrs. Morris, to be used by her in protecting a piece of property, the equity of redemption of which was in the judgment debtor, from a sale upon foreclosure then advertised to take place. The judgment debtor decided <not to use the money for that purpose and communicated with her mother by mail and obtained her consent to use the one *324 thousand dollars as a deposit with Darrow for the purpose of obtaining bail for her husband. The remaining two hundred dollars of that one thousand two hundred dollars was money belonging to the infant son of the judgment debtor and was used by her, by direction of her son, for the purpose of securing the release of his father from prison. On or before the 7th day of October, 1901, the judgment debtor delivered to her said husband, L. W. Becker, an order on Darrow for the money deposited with him, less fifty dollars paid to G. W. Cole and twenty-five dollars to the judgment debtor personally, and on the last-mentioned day the said L. W. Becker surrendered himself into the custody of the sheriff of Cattaraugus county, and said Darrow delivered to him the one thousand one hundred and twenty-five dollars remaining in his hands. This money was returned to the judgment debtor and one thousand dollars of the amount delivered or returned by her to her mother, Mrs. Morris, and the remainder returned to the savings bank for her son, Berlin Becker.
It thus appears that there was a controversy as to the ownership of the money in the hands of Darrow and disposed of by the judgment debtor at least as to the one thousand dollars of the same. This controversy was clearly disclosed in the papers before the county judge upon which the adjudication complained of was made and necessarily required the county judge to pass upon the question as to the ownership of the fund before making an order or adjudication, the effect of which was to transfer the fund or its equivalent to the judgment creditors. In a proper case a fine of two hundred and fifty dollars may be imposed as punishment for the violation of an order having no reference to the damages sustained by the judgment creditors by reason of such violation.
When, however, the court or judge includes in such a fine the damages sustained by the judgment creditors, such damages are to be ascertained upon proof, and are to be actual damages as distinguished from a fine imposed for punishment only. It is clear that unless the judgment debtor was the owner of the funds in the hands of Darrow, that the judgment creditors suffered no damages by the act of the judgment debtor in securing control and disposing of the same. It is equally clear that in the fine imposed the judge intended to compensate the judgment creditors in damages for the loss assumed to have been sustained by them through the act of the judgment debtor complained of, and as *325 we have seen, by assuming to settle the controversy as to the ownership of the fund which he must necessarily have done, in order to reach the conclusion that the judgment creditors had sustained any damages. The county judge had no power to proceed and try the. question of title to this fund nor to order delivery of the same to the sheriff to be applied upon the judgment which was the foundation of the proceedings. Crounse v. Whipple, 34 How. Pr. 333; Nathans v. Satterlee, 18 Abb. N. C. 310; Krone v. Klotz, 3 App. Div. 587; Rodman v. Henry, 17 N. Y. 482; People ex rel. Pease v. King, 9 How. Pr. 97; Serven v. Lowerre, 3 Misc. Rep. 113.
And possessing no such power, proceedings for contempt would not of course lie for disposing of the moneys in alleged violation of the injunction ordér. Gerton Carriage Co. v. Richardson, 6 Misc. Rep. 466.
The reason of this rule is apparent, for whether an order is made requiring a delivery of property to the sheriff to be applied in satisfaction of the judgment or a fine for the amount of the damages alleged to have been sustained by the defendant is imposed, payable to the sheriff for the same purpose, the same result is reached. In either case it must appear that the fund to be delivered of the fund diverted was the property of the judgment debtor, and there is no apparent reason why the judge should be permitted to determine a disputed question as to the ownership of the property in the one case rather than the other. When the fine includes damages, such damages are to be ascertained upon proof which necessarily requires the examination and decision of any disputed question which may arise in the proceeding as to the title of the property, and this conclusion is supported by Teller v. Randall, 40 Barb. 242; Dean v. Hyatt, 5 Wkly. Dig. 67.
The affidavits of Henry P. Kevins, William K. Harrison and Kate Morris were not before the county judge and have not been considered upon this motion.
The conclusion is that the county, judge exceeded his power in making the order and adjudication complained of) and instead thereof a receiver of the property of the judgment debtor should have been appointed, who would have been authorized to pursue filis fund and settle the title thereto in any appropriate action. In reaching this conclusion the cases of People ex rel. Noel v. Kingsland, 3 Abb. Ct. App. Dec. 526, and Jackson v. Murray, *326 12 Johns. 201, have not been overlooked. In People ex rel. Noel v. Kingsland the title to the money drawn from the bank was in the judgment debtor as a matter of law and the court was not called upon to adjudicate the title of rival claimants to the fund.
The decision in Jackson v. Murray was upon precisely the same facts and made upon the authority of People ex rel. Noel v. Kingsland. The order of the county judge is vacated and set aside, with ten dollars costs to judgment debtor.
Order vacated and set aside, with ten dollars costs to judgment debtor.