JULIUS H. MOORE, Administrator, &c., of HERBERT T. MOORE, Respondent, *v.* WILLIAM A. LITTEL, Appellant.

WILLIAM BEARD, Respondent, *v.* STEPHEN C. JACKSON, EDWARD JACKSON, and PARMENUS JACKSON, impleaded with COE D. JACKSON, and others, Appellants.

1. Since the abrogation of the rule in Shelly's case, and the enactments in the Revised Statutes of New York, a grant "to A for life, and after his decease to his heirs and their assigns forever," gives to the children of the latter a *vested* interest in the land; although liable to open and let in after-born children of A, and liable also (in respect of the interest of any child) to be wholly defeated by his death before his father. (GROVER, DANIELS and HUNT, dissenting.)

2. Such an interest, whether vested or contingent, is alienable during the life of A (the tenant for life), and passed by deed or mortgage, subject only to open or be defeated in like manner as before. (GROVER dissenting.)

THE first of the above actions was brought by Herbert C. Moore, to recover the possession of a certain lot of land in the city of Brooklyn, claimed by the plaintiff in fee simple, wherein judgment, in favor of the plaintiff, that he recover ten undivided eleventh parts thereof, with mesne profits as damages and his costs, was rendered in the City Court of Brooklyn ; which judgment was affirmed in General Term in the Supreme Court for the second district. (See 40 Barb., 488 ; 52 Barb., 9.)

The plaintiff's title was derived through a mortgage deed executed by Parmenus Jackson, and Edward C. Jackson and wife, to William Beard, dated May 1st, 1848, acknowledged March 14th, 1849, and recorded September 4th, 1849 ; the foreclosure of such mortgage in 1851, the purchase of the premises by the mortgagee, and his conveyance thereof to the plaintiff in 1855. The defendant was in possession, claiming under a lease from Parmenus Jackson, one of the mortgagors, made in 1860.

The second action above entitled is brought for the foreclosure of a mortgage given February 1st, 1859, by Coe D.

Jackson and wife, to Herbert T. Moore, and by him assigned to the plaintiff, William Beard, in which a judgment for the plaintiff, and for a sale of the mortgaged premises was rendered in the said City Court, and was affirmed by the Supreme Court in the second district.

The mortgagors in each case were children of John Jackson, who died in the month of March, 1861, and the questions discussed on the appeal in each are the legal efficiency of these mortgages to convey the land thereby mortgaged.

The premises in each case are parcel of the land which was granted by one Samuel Jackson, on the 5th day of January, 1832, to the said John Jackson, "for and during his natural life, and after his decease to his heirs and their assigns forever;" *habendum*, in nearly the same words, to the said John Jackson, "for and during his natural life, and after his death, then to his heirs and their assigns to their own proper use, benefit and behoof forever."

On the 1st of April, 1844, the said John Jackson granted, bargained, sold, released and conveyed the land to his twelve children, with all his right, title, interest and property therein. Afterward, one of those children (Charles C. Jackson) died intestate, unmarried, without issue; and on the 25th of April, 1848, the said John Jackson, and his wife, executed another deed, whereby they "granted, bargained, sold, released, conveyed and confirmed" the same land, with all their right, title, interest, &c., to his then eleven surviving children.

And afterward, by deed dated August 14th, 1848 (the said eleven children having made partition of the land), the nine other children, granted, bargained, sold, released, conveyed, and confirmed unto Parmenus Jackson and Edward Jackson, and their heirs and assigns, in fee simple, absolute, the lots assigned in the partition to them, including the premises (mortgaged by Parmenus and Edward Jackson), in question in the action first above, entitled *Moore* v. *Littel*, with all their right, title, interest, &c.; and therein the grantors, jointly and severally, and their heirs, covenanted the said premises in the quiet and peaceable possession of the grantees, their

heirs and assigns, against the grantors and their heirs, and *against all persons whomsoever* claiming or to claim, the same to warrant and defend.

By deed, dated February 13th, 1849, for the purpose of carrying out the said partition, the ten children of John Jackson, other than Coe S. Jackson, granted, bargained, sold, released, conveyed, and confirmed to Coe S. Jackson and his heirs and assigns, in fee simple, absolute, the lots assigned in the partition to him, including the lot (mortgaged by the said Coe S.) in question in the action second above entitled, *Beard* v. *Jackson*, with all their right, title, interest, &c., and therein the grantors covenanted that the premises were free of any incumbrances by them made or suffered ; and that the grantee, his heirs and assigns, should quietly and peaceably have, hold, possess and enjoy the premises, free, clear, and discharged of and from all estates, rights, titles, interests charges, had, made, caused, or suffered, &c., by the grantors or either of them, or any person claiming, or to claim the same by, from, or under them, or either of them, and without any let, suit, trouble, disturbance or interruption of the grantors, or either of them, or by their heirs or assigns, or of any person or persons lawfully claiming, or to claim the same by, from, or under them, or any or either of them.

The principal questions, therefore, argued in the two cases are the same, and they are exhibited in the claim that the mortgage deeds had no legal effect as conveyances of the mortgaged premises, further or other than to convey the estate for life therein, which had been vested in John Jackson, and which he had conveyed to his children, and by the partition deeds had come to the mortgagors.

Thereupon, two inquiries are presented :

1st. Had the children of John Jackson an interest in the fee of the premises, which they could convey at the time when the deeds in partition were executed?

2d. If they had no alienable interest, do the partition deeds, with the covenants therein, conclude them and those claiming under them, so that their subsequently acquired fee

in the premises as heirs of John Jackson, and at his death, enured to the benefit of their grantees?

*George F. Comstock,* for the appellant, upon the point that the conveyance by Samuel Jackson to John Jackson, "for and during his natural life, and after his decease to his heirs forever," gave to the children of John a contingent and not a vested remainder, cited *Campbell* v. *Rawdon* (18 N. Y., 412, 417); *Morris* v. *Stephens* (46 Penn., 200); Webb's case Rolle's Abr., 609; *Jackson* v. *Corey* (8 Johns., 385); *Hornbeck* v. *Westbrook* (9 id., 73); 1 Powell on Devises, 263, 310, 311, 418; 2 id., 215, 237, 238, 437; 2 Washburne on Real Estate, 228, 229, 238, 240, 244, 268, 565, 567, 524; 3 id., 3d ed., 237, 240, 556; 1 Pick., 27; *Wendell* v. *Crandall* (1 Comst., 491); Fearne on Rem., 5, 9, 28, 82 n. p., 216, 217; *Smith* v. *Parkhurst* (3 Atk., 138, 139); 4 Kent., 203, 206, 207, 209, 210, 211, 220; 1 Hill. on Real Estate, 497, 512, 515, 3d ed.; *Richardson* v. *Wheatland* (7 Metc., 169); 1 Curtis' C. C. R., 419; Year Books, 9 Hen. VI, 24 *a; Archer's case,* 1 Coke, 66; 1 Preston on Estates, 175, 177; 2 id., 35; *Danvers* v. *Earl Clarendon* (1 Vern., 35); *Moore* v. *Parker* (1 Skinner, 559); 2 Black. Com., 208; Chitty note, 8; Brown's Leg. Max., 503; Id., 3 Eng. Ed., 464; *Brown* v. *Lawrence* (3 Cush., 390, 397); *Hawley* v. *James* (16 Wend., 139); 5 Wallace, 288; Willard's Real Estate, 158.

These being contingent remainders, and the contingency relating to the persons who are to be the heirs of John, they are inalienable. (*Jackson* v. *Waldron*, 13 Wend., 178, 219; *Jones* v. *Roe,* 2 Term R., 88; *Lampet's case,* 10 Coke, 51; Fearne on Rem., 371; 4 Kent, 261, note 1, 262; 2 Washb. 238, 552.) As to the alleged estoppel arising out of the covenants in the partition deed of eight-elevenths to Parmenus and Edward Jackson, he cited 4 Kent., 98; 2 Washb. 476, 477; 3 id., 3d ed., 105, 106; *Jackson* v. *Van Keuren* (9 Cow., 271); *Lewis* v. *Beard* (3 McLean, 56, 78); 2 Preston on Abst., 216, 212; Co. Litt., 47 *b.* ; *Jackson* v. *Hubble* (1 Cow., 613); *Jackson* v *Waldron* (13 Wend., 178, 207); *Miller* v. *Ewing* (6 Cush.,

34, 40); *Pettibone* v. *Jackson* (11 Wend., 110, 118); *Wright* v. *Shaw* (5 Cush., 56); *Blanchard* v. *Brooks* (12 Pick., 47); *Jackson* v. *Hoffman* (9 Cow., 271); *Comstock* v. *Smith* (13 Pick. 121); *Doane* v. *Willcutt* (5 Gray, 328); *Jeffries* v. *Bucknell* (2 B. & Ad., 278); S. C., 22 Com. Law R., 73; 4 Kent's Com., 98; *Brewster* v. *Striker* (2 Comst., 19); *Sinclair* v. *Jackson* (8 Cow., 543, 586); *Hermitage* v. *Tompkins* (1 Lord Raymond, 729).

There is no estoppel arises from the mortgage which contained no covenants. (*Jackson* v. *Hubble, supra; Jackson* v. *Wright*, 14 Johns., 193.)

*D. P. Barnard*, for the respondent, upon the question of the nature of the remainder to John Jackson's heirs, cited 4 Kent, 214; *Brant* v. *Gelston* (2 Johns., Cas., 384); *Schoonmaker* v. *Shelly* (3 Denio, 485); *Brown* v. *Lyon* (2 Seld., 419); 1 Revised Stat., 725, §§ 7 to 13, 28.

That the estate was alienable by John Jackson's children before his death, he cited, *Laurence* v. *Bayard* (7 Paige, 70); *Miller* v. *Emmons* (19 N. Y., 384); *Wilson* v. *Wilson* (32 Barb., 328); *Gilman* v. *Reddington* (24 N. Y., 10); *Everitt* v. *Everitt* (29 N. Y., 77); *Rogers* v. *Rogers* (3 Wend., 503); *Talman* v. *Wood* (26 Wend., 1); *Moore* v. *Lyons* (25 Wend., 119); *Williams* v. *Field* (2 Sand. Ch. R., 533).

Upon the question of estoppel, he cited *Pickard* v. *Sears* (6 Adolphus & Ellis, 469, 474); 1 Phil. Ev., 471; *Welland Canal Co.* v. *Hathaway* (8 Wend., 483); *Frost* v. *Saratoga Mutual Insurance Co.* (5 Denio, 154); *Van Rensselear* v. *Kearney* (11 How. U. S. R., 297); *Jackson* v. *Stevens* (16 J. R., 110); *Jackson* v. *Bull* (1 Johnson's Cases, 81); *Barber* v. *Harris* (15 Wend., 615); *Vanderheyden* v. *Crandall* (2 Denio); S. C., 1 Comst., 491; *Jackson* v. *Murray* (12 J. R., 201); *Jackson* v. *Stevens* (13 J. R., 316); *Jackson* v. *Hubble* (1 Cow., 613); *Bank of Utica* v. *Mersereau* (3 Barb. Ch., 528); *Rickert* v. *Snyder* (9 Wend., 421); *Allen* v. *Culver* (3 Denio, 295); *Sweet* v. *Green* (1 Paige, 473); *Kellogg* v. *Wood* (4 Paige, 578).

WOODRUFF, J.  In the memorandum of my conclusions in the case of *Sheridan* v. *House*, submitted on points, in September, 1868, and which was made for the purposes of the consultation with my brethren, and not as an opinion for publication, (see 4 Keyes' Rep., p. 569), I noted some views of the nature of the interest which under the grant from Samuel Jackson to John Jackson and his heirs, the latter had under the provisions of our statutes.

That memorandum is an imperfect exhibition of the reasons why, under those statutes, that interest is alienable, and effectually passed from the respective *grantors* to the *grantees* in the partition deeds, and without further explanation is not likely to be fully understood.

It is clear, that by the common law, as declared in Shelly's case, the grant to John Jackson, "for and during his natural life, and after his death to his heirs and their assigns forever," would have conveyed to him a fee.

It was not intended, in *Sheridan* v. *House*, to say that the *mere* abrogation of the rule, declared in that case, had the effect to vest in any persons a remainder in fee in the premises. Our statute declares that under such a grant, "the persons who, on the termination of the life estate, shall be the heirs, * * * shall be entitled to take, as purchasers, by virtue of the remainder so limited to them."

This phraseology, it will be presently seen, I think, harmonizes with other provisions of our statutes, and contemplates a termination of the life estate by the death of the tenant for life, and by that only; but I concede that, as a mere abrogation of the former rule, declared by the courts in England, it would leave the estate in the alternative insisted upon when under discussion before Shelly's case was decided; that is to say : the effect of the grant would be to give to John Jackson an estate for life, with remainder to those uncertain persons who might be his heirs at his death.

And this remainder would be a contingent remainder, at the common law, because, during his life, no person could answer that designation ; and not alone for this reason, but

because it could not be averred by any person that he would be the heir of John Jackson at the time when the life estate of the latter (the present estate,) was determined, nor, necessarily, if it should be presently determined.

Decisions and text writers agree that, by the common law, a remainder is vested, when there is a person in being who has a present capacity to take the estate in remainder, if the particular estate be then presently determined. Otherwise, the remainder is contingent. It is said that before the remainder is vested, the person must be ascertained; and, in this sense, that is precisely true; the person must be one to whose competency to take no further or other condition attaches, &c., *i. e.*, in respect to whom it is not necessary that any event should occur, or any condition be satisfied, save only that the precedent estate shall determine.

An illustration used on the former occasion is apt to this, a grant to A for life, remainder to the heirs of B. Now it is perfectly true that, during the life of B, the heirs of B are not ascertained, and there can be no capacity to take on the determination of the life estate until B dies. As to any person living, it is requisite that another event should happen besides the determination of the life estate, to entitle him to the possession.

On the other hand, if it were inevitably true at the present moment that an estate for life in A could not be now determined without *eo instanti* entitling B to possession, under the grant of the remainder, could it be said even at the common law that B had not a vested remainder?

I answer, *first*, that it has not been so stated nor held; and *second*, that whenever that condition of things exists, the remainder is held to be vested; and *third*, in the case of a grant of a life estate to one and of the remainder to his heirs or to the heirs of another, it is not at the common law inevitably true, while the ancestor lives, that the life estate will not be determined before such heirs can be ascertained; in which event the remainder will be wholly defeated, and the heirs, when ascertained, will take nothing.

This is a familiar result of the destruction of the precedent life estate before the remainder-man is ascertained or before the happening of the condition upon which he was entitled in remainder; a result ingeniously guarded against by conveyancers, by the interposition of trustees to take from and after the termination of the life estate, and to hold in trust to preserve the contingent remainders for and during the natural life of the life tenant.

In a certain class of cases, *i. e.*, where there was a reversion expectant upon the determination of all the precedent estates, the life estate of the first taker might become merged in the inheritance.

So, by the common law, an alienation by feoffment and livery of seizin by the tenant for life, whereby the estate in remainder or reversion is divested, operated as a forfeiture, upon feudal grounds, it being a renunciation of the feudal connection with his lord.

So under some circumstances of a disclaimer to hold of his lord.

So of attainder of treason or felony, and the consequent forfeiture.

So of a surrender to the reversioner where that is possible.

And it is obvious that the tenancy for life may itself depend upon some condition subsequent, which, although it does not destroy its legal character or incidents as a tenancy for life, may yet terminate it before the death of the tenant.

Now, in all such cases (some of which have no likeness to the case now before us), it cannot be averred that a remainder man, who has no right of possession until the death of the tenant for life, would have the immediate right if the precedent estate should then terminate.

This liability of the precedent life estate to be determined before the actual decease of the tenant for life, has led to a discussion of the question whether, after a grant to one, so long as he lives or so long as he lives a natural life, and after his decease to another, does not necessarily create a contingent remainder.

HAND — VOL. II.        10

This was the decision of the courts in New Hampshire, in *Hall* v. *Meta* (38 N. H., 422), and *Hayes* v. *Taber* (41 N. H., 421). But this decision has been the subject of criticism, and cannot be said to be generally approved, while the contrary has often been stated and held on the ground that it is uncertainty in the right of enjoyment, and not the uncertainty of its actual enjoyment that renders an estate contingent.

And this suggests again the inquiry whether, if it be inevitably true in a given case that the determination of the life estate cannot happen without *eo instanti* entitling the remainder-man to possession, he has not a vested remainder.

In general, the answer must and will be in the affirmative. But it is said that where the remainder is limited to the heirs of the tenant for life, there, even if you can exclude all possibility of terminating the particular estate by means other than the death of the tenant, no one can have a vested estate in remainder, because two events (in legal theory) must happen before his right is absolute, viz.: 1. The tenant must die and terminate the particular estate. 2. The tenant must die and so ascertain his heirs.

That although the single fact, to wit, the death of the tenant, accomplishes both results, and although if that death should now happen, there is a person immediately entitled to take, still, the character of heir must be gained before the remainder can vest in possession, and the remainder must vest on the instant of the death; and so in theory, the former must precede the latter.

It would be doing no violence to good sense to say that, when the same fact (the death of the tenant for life) at the same instant must determine who is heir and vest the remainder in possession, then it is true that there is at any time an ascertained person who has capacity to take if, the present estate *then* determines.

In such case, the test proposed by NELSON, Ch. J., in *Hawley* v. *James* (16 Wend., 137), would be apt to determine that a remainder is vested in any case in which the particular estate can only be determined by the death of the

tenant for life, viz.: When nothing can prevent such remainder from vesting in possession but the death of the remainderman before the termination of the life estate.

It is not, however, in my judgment, profitable nor necessary to the view which I intended to suggest, that I should pursue the consideration of the peculiar case created by the grant now in question, if it were to be governed by the refinements of the common law, under the influence of its feudal customs, restrictions, complications, and of the ingenuity and learning sometimes employed to avoid rather than give rational effect to the intention of parties.

It was one of the objects of our Revised Statutes to reduce to greater simplicity the rules governing the taking, holding, and transmitting of real estate, and, especially, to favor the vesting of estates and the alienability thereof.

And in my judgment, the statute definition of remainders vested and contingent (in connection with other statutes, forming part of an entire system), has made the answer to some of the questions above proposed, simple and easy; and I have occupied time in the preceding discussion, chiefly that the design and meaning of the statute might be more clearly apparent.

By the statute (1 R. S., 722, chap. 1, til. 2, art. 1st), estates, in respect to their nature and duration, are divided into estates of inheritance, estates for life, estates for years, and estates at will, and by sufferance.

Estates as respects the time of their enjoyment, are divided into estates in possession, and *estates in expectancy.*

An estate in expectancy is where the right to the possession is postponed to a future period.

Estates in expectancy are divided into, estates *commencing* at a future day, denominated *future estates,* and reversions.

A future estate is an estate limited to commence in possession at a future day, either with or without the intervention of a precedent estate, or on the determination, by lapse of time, or otherwise, of a precedent estate, created at the same time; and where a future estate is dependent upon a prece-

dent estate, it may be termed a *remainder*, and may be created and *transferred* by that name.

Future estates are either vested or contingent.

They are "*vested* where there is a person in being who would have an immediate right to the possession of the lands upon the ceasing of the intermediate or precedent estate."

They are contingent whilst the person to whom, or the event upon which they are limited to take effect, remains uncertain."

Here, discarding all the abstruse and refined discussions and disputes, as to what constitutes an estate, and what a mere possibility or expectation (so far as material to the present inquiry), we have a series of statute definitions, under which a remainder expectant upon the determination of the statute *of a tenant for life is declared to be:* 1st. An "estate in expectancy." 2d. A "future estate;" and it is either vested or contingent.

If there "is a person in being who would have an imme- diate right to the possession of the lands upon the ceasing of the precedent estate, then that remainder is vested" within the terms of the statute. It is not "a person who *now has* a *present* fixed right of future possession or enjoyment," but a person who would have an immediate right if the precedent estate were now to cease. I read this language according to its ordinary and natural signification, and if you can point to a human being and say as to him, "that man or that woman, by virtue of a grant of a remainder, would have an imme- diate right to the possession of certain lands if the precedent estate of another therein should now cease," then the statute says, he or she has a vested remainder.

It was argued on this appeal, that definitions of vested and contingent remainder in adjudged cases, and text writers have not been successfully attempted, and that our revisors did not attempt to alter the law, or do more than describe what had already been adjudged to be vested, and what to be contingent.

In my opinion, they have defined a vested remainder in terms that do clearly avoid much of the uncertainty in which the subject was before involved, and in such terms that it is now true, that if there be a person in being of whom it can be positively averred, that if the estate for life were now to cease he would have an immediate right of possession he has a vested remainder; and notwithstanding subsequent events may defeat it, the operation of the statute itself is to make them subsequent conditions.

Why was a remainder to the heirs of A. after the expiration of the life estate of B. contingent at the common law? Because B might die before it was ascertained who are the heirs of A.

Why is it said that a remainder to the heirs of A., after the determination of a life estate in A. is contingent? Because the life estate may, at the common law, be determined before it is ascertained who are the heirs of A.

Hence the introduction, into the various definitions, of the qualification so much insisted upon in the argument of this appeal, that no estate can vest until the person in whom it is to vest shall be ascertained; and from this it follows, if there be some condition which must be fulfilled, before the person who will take on the determination of the precedent estate is known, there can be no vested remainder.

But here suppose, that the one sole condition, to wit: The determination of the precedent estate is all that is necessary to entitle a person *in esse* to take, it is not denied that such person has a vested remainder. Why, then, if the precedent estate can only be determined by the death of the life tenant, and by that death the heirship is alike also determined, is not the statute definition in all respects satisfied? It makes the precise case described, and I deny the right to interpolate qualifications drawn from the refined reasoning of cases or text-books, prior to the statute, to limit the operation of its plain terms.

Now, in the case before us of an estate in John Jackson for his natural life, with remainder to his heirs, I know of nothing

other than the death of John Jackson which would determine the life estate which was vested in him; his interest may cease by conveyance or other transfer, but the life estate will continue until his natural death. He could do nothing which would defeat the remainder. (1 R. S., 725, § 32.)

He could do nothing which would extinguish the life estate by merger in the inheritance.

His alienation, or attempted alienation, by feoffment, fine and recovery, or otherwise, of a greater estate than his own, could not forfeit the life estate, or determine it, because feoffment and livery of seizin are abolished here; we have no fine and recovery; and, finally, conveyances here by a tenant for life, although in form conveying a greater estate than he possesses, do not work a forfeiture of his estate, but will pass to the grantee such estate, title and interest as he can lawfully convey. (1 R. S., 738, § 1, p. 739, §§ 143, 145.)

Whatever effect the disclaimer of his landlord's title, by a tenant for years, in any possible form, by record or otherwise, may have have upon his rights as between him and his landlord, no disclaimer by John Jackson could operate to extinguish the life estate. (See *Jackson* v. *Noyes*, 11 J. R., 33; *Jackson* v. *Vincent*, 4 Wend., 633; 1 Washburn on Real Property, 92.)

Conviction of felony no longer works a forfeiture. (2 R. S., 701, § 22.)

And whatever was the effect of an attainder of treason in England, it is clear that here, since it is enacted that no act of the tenant for life, nor any destruction of the precedent estate shall defeat the remainder, no outlawry upon conviction of treason, which operates as a forfeiture during his life only (2 R. S., 656, § 3), can have any effect except as a transfer of such life estate.

Our statutes have, therefore, taken the case out of the condition of a contingent remainder at the common law, and have brought it within the statute definition; and for the reason that in respect to any child of John Jackson, it was, at any and every moment of his life, inevitably and unquestion-

ably true that if John Jackson then died, he would have an immediate right of possession of the lands. During John Jackson's life he was not heir, and had not such right; the one event, which might at any moment happen, determined the life estate, and *eo instanti*, being "heir," he was entitled to possession; not by descent, but by "purchase", the statute declares.

But it has been argued that this construction of the definition of vested remainders, leaves very little room for the application of the definition of a contingent remainder, which immediately follows, and that it withdraws entirely from the test of their character, in this respect, the certainty or uncertainty of the person entitled in remainder.

So far as it can be shown that the statute, or any sensible construction thereof, tends to the holding of estates vested, rather than contingent, so far that construction is strengthened and sustained by the policy of the law, which always favored such holding. And it will be no evil in this country that those interests, which, by reason of contingencies or possibilities, are often held withdrawn from the ordinary incidents of property, are few.

But the construction given to the definition, does by no means destroy the effect of the definition of a contingent remainder.

That definition is to be construed in connection with the other; if there is no person who would have an immediate right of possession upon the ceasing of the intermediate or precedent estate, *i. e.*, if no person can be found of whom this can now be avowed, either because if that precedent estate should now cease, it would be uncertain who was entitled, or whether the event upon which it was limited would happen; then the remainder is contingent.

This definition is a very important one in connection with another section abrogating the common law rule in another particular (§ 34), which provides that no remainder, valid in its creation, shall be defeated by the determination of the precedent estate, before the happening of the contingency on

which the remainder is limited to take effect, but should such contingency afterward happen, the remainder shall take effect in the same manner, and to the same extent, as if the precedent estate had continued to the same period.

Now, cases may be multiplied in which it is now true, that it is uncertain who will take, or whether any specified one will take in remainder, if the life tenant now dies. Such a remainder is still a contingent remainder, *e. g.*, estate for life in A, remainder to the heirs of B.

The remainder is contingent, and will remain still a contingent remainder, even though A should die to-day.

So of a grant of a life estate to A, remainder to the longest liver of B and C. While both are alive, it is uncertain who will be entitled to the possession, as remainder-man, and it must remain uncertain, though the life estate should now cease.

So of a grant to A, for life, remainder to B, if he shall return to this country. While B is abroad, it is uncertain whether the event will ever happen upon which he will be entitled to the possession, and, on the present determination of the life estate, he is not so entitled.

Without enlarging further, the statute, rejecting technical expressions and phrases heretofore employed, meant by *person*, just what it expresses, and no more. "When there is a person in being," means when you can point to a human being, man, woman or child; and, "who would have an immediate right to the possession of the lands upon the ceasing of the precedent estate," means that if you can point to a man, woman or child who, if the life estate should now cease, would, *eo instanti et ipso facto*, have an immediate right of possession, then the remainder is vested, and, by necessary consequence, all the contingencies which may operate to defeat the right of possession are to operate, and only to operate as conditions subsequent.

This view of the subject is not novel. The late Chancellor WALWORTH, in *Lawrence v. Bayard* (7 Paige, 75), expresses the like opinion. In that case, under the will of John G.

Luke, and the act of the legislature, one-fourth of the proceeds of 600 shares of bank stock (whereof the widow was entitled to the income during her life) were to be paid upon her death to the *then* surviving eldest son of William Bayard. In 1832, there were living two sons of William Bayard, and the widow being still alive, the oldest of the two assigned his interest to one of the defendants, Hall. After the death of the widow, in 1836, the question arose in that suit whether the interest was assignable, and it was argued there, as in the present case, that, until the death of the widow, it was wholly uncertain who would take the remainder ; and that, until then, the assignor had a mere possibility that he might be at her death the oldest son of William Bayard then surviving, and, as such, entitled to take.

The chancellor says : " There is no foundation for the objection. *     * It was not a mere possibility, or even a possibility coupled with an interest, but it was *a vested remainder in one-fourth of the* 600 *shares of the bank stock, according to the statutory definition of vested remainders ;* for the assignor was the person in being, and ascertained who would, in 1832, have had an immediate right to the possession of such bank stock if the life estate of Mrs. Leake therein had then ceased. (1 R. S., 723, § 13.) He was the oldest son, to whom this remainder was limited, subject only to be divested by his death during the continuance of the particular estate or interest of Mrs. Leake. *     * I admit that the substituted remainder of his brother, Robert, necessarily remained contingent so long as his eldest brother was living. Nothing could defeat the right of the assignor to the bank stock, or its proceeds, as an interest in possession, if he continued to live until the life interest of Mrs. Leake terminated ; and it is the present capacity of the *individual* to take the remainder in possession, if the particular estate should immediately determine, which vests the remainder in interest, and not the absolute certainty that such remainder will ever, in fact, become vested in possession in him."

Obviously all that is said by the learned chancellor of the

HAND — VOL. II        11

assignor, in that case, was true of any child of John Jackson in 1848, when the partition deeds were executed.

Again, in *Mead* v. *Mitchell*, in this court in 1858 (17 N. Y., 210), there was a devise of real estate to a trustee for the natural life of a niece of the testatrix (Mrs. Hudson), and after her death, in default of an appointment by her, to convey to " such persons of the blood of such niece as would have inherited from her if it had been real estate, and she had died intestate, seized of the same." The will then gave the niece power to appoint the rents by will to the use of her husband for life, and to appoint the estate after his death to such persons of her blood who would inherit, in case of her death, intestate, seized thereof, as she might select, and for such estates as she might think proper. A bill was filed by a third party, who was tenant in common with these persons, for the partition of the premises in the lifetime of the niece, her husband, and her son, W. H. Hudson, and Catharine H. Robinson, a granddaughter. The last named two were the persons who, if she then died, would be heirs-at-law of her blood. On a sale in partition, the purchaser refused to take title on grounds similar to those urged in the present case, viz.: That it was wholly contingent and uncertain who would be the heirs of the niece when she should die, and therefore uncertain until then who would take the remainder in fee : That such persons might not yet be in existence, and would not be bound by the judgment and sale.

It was held that the purchaser would obtain a good title and was bound to take; and this was placed upon the ground that such contingent limitations over were made to persons not in being the latter would be bound by a decree against their virtual representative, viz., the persons having the first vested estate of inheritance ; and that this was so, notwithstanding such persons were liable to have their seizin defeated by subsequent events, and hence that the son and granddaughter having a vested remainder, though liable to be defeated, stood as the representatives of those uncertain persons who might be heirs of the niece at her death. In the opinion of the court by

PRATT, J., it is said: " The defendants, William Henry Hudson and Catharine H. Robinson, hold an executory interest in the nature of a vested remainder, subject to be opened, to let in after born children of Mrs. Hudson, and to be entirely defeated in case other children should be born, and she should make an appointment exclusively in their favor. These defendants, William H. and Catharine, now have a vested interest; for they are now persons in being, who would take upon the termination of the precedent estate in the trustee for the life of Mrs. Hudson. But it is possible that persons may yet come into being who will be entitled to take, under the will with them, and, if Mrs. Hudson should so appoint, might take to the exclusion of those now living;" and it might also have been added: " If either Wm. H. or Catharine should die before Mrs. Hudson, the interest now vested in them would be defeated."

The reporter states that all the judges concurred, and although it does not necessarily follow that they all concurred in the reasoning, it is certain that no dissent therefrom was expressed.

It is possible to say of each of these cases, that other grounds also existed upon which the decision could be sustained. Nevertheless, it is sufficient for my present purpose to say that they are clear and distinct expressions on the precise point I have considered, in harmony with my views.

2d. If the preceding reasoning be wholly fallacious, and be deemed to give an interpretation to the statute, and a construction to the law which is unsound, I am wholly unable to see how the result to the present appellants would be different.

The alternative insisted upon is, that since our statutes, and notwithstanding our statutes, the children of John Jackson had only contingent remainders in fee of the land, whereof they made partition, and that, therefore, they conveyed nothing by the deeds they severally executed.

Here again, the change made by our Revised Statutes is important.

A contingent remainder, it is said in the books, was aliena-

ble, when the uncertainty which made it contingent was in the event upon which it was limited to take effect, and was only inalienable when it was uncertain to whom the remainder was limited; and this distinction is affirmed and relied upon by the counsel on this appeal. (See Washburn on Real Prop., 237–8; Williams on Real Prop., 232–4; Preston on Estates, 76.) Though this distinction has often been overlooked or denied. (See *Striker* v. *Mott*, 28 N. Y., 82; Williams on Real Prop., 231; 4 Kent, 261–2.)

It is now insisted that our statute has both affirmed and perpetuated this distinction.

The frame of the statute, and its language, are inconsistent with this; and the whole policy of our law which encourages the free transmissibility of property of every description is in marked hostility to it.

As above shown, "expectant future estates" as defined in the statute, do expressly include all remainders, whether vested or contingent. Not only so, the "expectant future estates," of which the article treats, are declared to be "contingent, whilst the person to whom, or the event upon which they are limited to take effect remains uncertain." And notwithstanding the uncertainty in the person who may in the future be entitled thereto, the expectancy or estate is declared to be a "remainder," and "it may be created and transferred by that name." Nothing can more clearly declare, therefore, that a remainder, which is contingent because the person to whom it is limited is uncertain, is an expectant estate. And thereupon, the statute declares, that expectant estates are descendible, devisable, and alienable.

Instead of perpetuating, this abrogates all distinctions, and gives to all expectant estates, of whatsoever description, and whether vested or contingent, and whether contingent upon an event which may never happen, or by reason of uncertainty in the person, the character or quality of alienability.

It is argued that another section of the statute restrains the effect of the first, to wit: "The absolute power of alienation is suspended when there are no persons in being by

whom an absolute fee in possession can be conveyed," and such suspension for more than two lives in being shall render the future estate, which works that result, void.

These provisions were not intended, and do not operate to restrain alienation at all; they are made and intended expressly to prevent such restraint, except within brief limits.

They do not import that the contingent remainder may not be aliened, but only where contingent remainders are so limited that, for a period not authorized, an *absolute* fee cannot be conveyed, the future estate having this effect shall be void.

Indeed the alienation of the contingent remainder is entirely consistent with inability to convey an absolute fee. Where the successive estates are all valid, every person in being having any vested or contingent interest may often convey, and they may be entirely capable of conveying, and yet no absolute fee be conveyed. It is to prevent this, for too long a period, that the statute declares the effect of such a restraint of alienation.

These are the words, also, of the statute, "the *absolute* power of alienation is suspended when there is no person by whom an absolute fee in possession can be conveyed;" this is not saying that a future estate in expectancy cannot be aliened when there is no person by whom an *absolute fee* can be conveyed; and yet, this is the inference urged upon us.

It might as well be argued that the precedent life estate cannot be aliened when there is no person by whom an absolute fee can be conveyed; and it is like the argument that because an estate is limited to an unborn child, such limitation, *per se*, imparts to the estate itself the quality of inalienability, because, until the child is born, he cannot convey. The contingency of birth may make an estate contingent, but the physical fact of inability to convey does not affect its quality. It may be a remainder in fee simple, or a term for years, or for life; their quality of alienability does not depend upon the question whether the remainder is limited to one who has legal or physical capacity to convey, but upon its

essential nature. If contingent, then the statute says it is alienable, *i. e.*, it has that character and quality.

Whether the absolute fee in land may not be so situated that the actual alienation of all present vested and contingent interests will not avail to convey an absolute fee in possession, is a totally different question, and one on which the alienability of the contingent remainders in nowise depends.

It is, of course, true that in the present case the contingent estate of no child of John Jackson could descend, or be devised; but this is not because the statute has not given to all contingent remainders the quality of being devisable, descendible and alienable, but because in the special instance before us the death of such child would defeat it. The statute is to be applied according to the nature of the contingency, and in consistency with it.

An expectant estate for life, clearly vested, is alienable, but is not descendible nor devisable in its very nature.

The statute designed to give to all expectant estates, vested or contingent, the same character and quality in these respects. The actual ability to devise or transmit, or to convey, and the efficiency of alienation to confer an absolute fee, it was not the purpose of the statute to declare. In the case above referred to (*Lawrence* v. *Bayard*), the chancellor declares that the statute making expectant estates alienable includes every present right or interest, either vested or contingent, which may by possibility vest in possession at a future day. The mooted question whether a mere possibility, coupled with an interest, is capable of being conveyed or assigned at law is, therefore, forever put at rest in this State. *Miller* v. *Emans*, in this court (19 N. Y., 384), supports the alienability of remainders, though contingent. Upon this ground, if I am wholly wrong in the point first discussed, the judgments should be affirmed.

I think it no less clear that the deeds, given on the partition of the premises, operated by way of estoppel to give the grantees a fee in the lots conveyed, as against all the grantors who survived John Jackson. In this respect I concur fully

in the opinion of GROVER, J., in *Sheridan* v. *House;* but as this estoppel only operates in one of these cases as to nine-elevenths, and the other as to eight-elevenths, I do not pursue the subject.

Whether the mortgagors can impeach their own mortgage of these separate shares, or whether, on a proper application to a court of equity, the son of Fanny Baldwin would not be confined to the particular lots set to her in the partition, if ·that was found to be his full equitable share, it is not necessary in these cases to consider.

The judgments should be affirmed,

GROVER, J. (dissenting.) The counsel for the respondent now insists, that the defendant, deriving title from Parmenus Jackson·subsequent to the mortgage given by him, under which the plaintiff makes title, is estopped from showing that title in. fee was not acquired by the foreclosure of that mortgage, and that, therefore, the plaintiff was entitled to recover the entire premises in fee as against him, irrespective of the validity of his title in other respects. It is true, that the defendant took the title from Jackson subject to all estoppels binding him at the time he parted with it. The mortgage contains no covenants warranting the title. The statute (1 R. S., 739, § 141) provides that no covenant shall be implied in any conveyance of real estate, whether such conveyance contained special covenants or not. It thus appears that there is no record evidence raising an estoppel against Jackson. Whether estopped or not, must depend upon his acts and representations as to the title at the time he gave the mortgage, and of the reliance placed thereon by the mortgagee. No inquiry as to these facts was gone into upon the trial, and no claim of any estoppel upon the appellant was then made by the counsel for the respondent. That claim cannot now be successfully made in this court, unless it appears that no evidence which could have been given upon the trial would have furnished an answer thereto. The counsel for the appellant insists that the respondent's title can derive no support from the deed

given by Stephen C. Jackson, and other children of John Jackson, to Parmenus Jackson and Edward Jackson, who gave the mortgage under which the plaintiff deduces title, for the reason that the mortgage bears date prior to the date of the deed; and that although the mortgage was acknowledged subsequently thereto, still the presumption is that it was delivered and took effect at its date. It is unnecessary to determine the question sought to be thus raised for the reason that it was not in any way raised upon the trial. The deed was received in evidence as tending to show title in the plaintiff, without any objection, and the counsel for the defendant did not ask the court for any ruling as to the time of delivery. It is settled that no objection not raised upon the trial, can be made in this court, unless it clearly appears that no evidence which could have been given would have obviated it, if made. Had this objection been made upon the trial, for aught the court can see, the plaintiff might have proved that the mortgage was not delivered until after the delivery of the deed. It must, therefore, be assumed, in this court, that such was the fact; that the plaintiff is entitled to the full benefit of that deed in establishing his title. This brings us to an examination of the title of Parmenus and Edward Jackson, at the time of giving the mortgage to Beard, which is the basis of the plaintiff's title. Samuel Jackson was the owner in fee in 1852. In that year he conveyed the premises, with other lands, to John Jackson, for and during his natural life, and after his decease, to his heirs and their assigns, forever. This, at common law, would have given to John Jackson the entire fee. (1 Coke's Rep., 93.) The rule settled in the above, and confirmed by numerous other cases, was abolished in this State by statute. (1 R. S., 725, § 28.) That section provides, that when a remainder shall be limited to the heirs, or heirs of the body of a person to whom a life estate in the same premises shall be given, by the same conveyance, the person who, on the termination of the life estate, shall be the heirs, or heirs of the body of such tenant for life, shall be entitled to take, as pur-

chasers, by virtue of the remainder, so limited to them. Under this statute, it is clear that John Jackson took a life estate only. John Jackson conveyed the premises, and other lands embraced in the deed of Samuel to his children, eleven in number, prior to the execution of the mortgage. Under this conveyance from John, it is clear that the children acquired an estate for his life only. Having thus acquired the life estate of John Jackson, his children made partition of all the lands between themselves; and for this purpose, all the children of John, except Parmenus and Edward, the mortgagors, conveyed the premises in question in fee to the latter, by deed, containing a covenant for quiet enjoyment by the grantees, their heirs, &c. John Jackson was living at the time of the execution of the partition deed, and also at the time of the execution of the mortgage, but has since died. The question thus arises, as to what interest, if any, the children of John Jackson took, under the deed from Samuel to John, during the life of the latter. The counsel for the respondent insists, that by virtue of that deed, they acquired a vested remainder, giving them a fee upon the termination of the life estate of John, and, having acquired this life estate by the deed from John to them, were after that owners in fee. The counsel for the appellants insists, that inasmuch as it was entirely uncertain, during the life of John, who would be his heirs at the time of his death, that the remainder, limited to such heirs by the deed of Samuel, was contingent during the life of John, and did not vest as an estate in any one, for the reason that there was no known ascertained person of whom it could be predicated that he would be an heir of John Jackson at his decease. The counsel for the respondent insists, that inasmuch as the entire estate of Samuel would, by virtue of the deed, have passed from him and vested in John prior to the abolition of the rule in Shelly's case by statute, the same effect, so far as respects his estate, should now be given to the deed, and that therefore it must be held that his entire estate passed from him, and that the statute precluding John Jackson from taking any but a life estate, it follows that the remainder

must vest immediately in others, and that the deed providing that this remainder should go to the heirs of John, it immediately vested in his apparent heirs.

The error in this reasoning (if any) is in assuming that the entire estate at once passed from Samuel, by virtue of his deed. True, it would have done so prior to the abolition of the rule in Shelly's case, for then the entire estate would have vested in John, and of course nothing would have remained in Samuel; but when the statute changed the rule by providing that John should take a life estate only, the remainder of the estate remained in Samuel, unless granted by the deed to known, ascertained persons capable of taking it. The statute did not change the rule, that to make a grant effectual in passing an estate, there must be a known grantee specified in the deed, in the absence of which nothing passed, and the estate remained as before. In the present case, the remainder passed from Samuel, in case it is held that it vested in such persons as would have been the heirs of John had he died presently; and if not so held, the remainder continued in Samuel and his heirs, until, by the death of John, his heirs were ascertained. The counsel for the respondent also insists, that John Jackson, having twelve children at the time he received the deed from Samuel, who were the apparent heirs of the former, and who, by form of the statute, abolishing the rule in Shelly's case, would, in case of the death of their father, take the estate as purchasers, must be assumed to be the persons designated by the word heirs; and that, therefore, the remainder at once vested in them. This position is sustained in part by § 13 of the statute (1 R. S., 723), and in part by the common law. So far as it rests upon the statute, it will be hereafter considered. The counsel cites a number of cases, principally arising upon wills, in which, looking at the entire contents of the will, it has been held that the testator designed, by the term heirs, to designate the class of persons who would be such, in case the person whose heirs were designated was dead; and in those cases, the courts have held that such persons were des-

ignated and ascertained by the term heirs, and being so ascertained, the estate at once vested in such persons irrespective of whether they ever became heirs in the ordinary sense of the term. *Doe* v. *Perrin* (3 Term., 484); *Turner* v. *Livingstone* (12 Wend., 83), are cases of this class. Numerous cases of the same class will be found cited and reviewed in *Sisson* v. *Seabury* (1 Sumner, 235). It will be readily seen that these cases have no application to the present. In the present case, there is nothing showing that the word heirs was used in the deed from Samuel Jackson in any other than the ordinary sense, or that there was any design that any persons should enjoy the remainder, except such as answered the description of heirs to John at the time of his death. Having arrived at the conclusion, that the persons who were heirs of John Jackson, at the time of his death, were the only persons entitled to the remainder, it remains to consider whether these persons, either at the common law or by statute, had any interest in the estate during the life of John, which they could alien; and if no such interest, whether the possibility of their acquiring the estate could be transferred by them. The legal and well understood meaning of the word heir, is, the one upon whom the law casts an estate of inheritance, upon the death of the owner. It follows, from the very nature of the thing, that this person is uncertain, until death occurs; for, until that event, it can never be known to whom the estate will fall. Hence the maxim, *nemo est haeres viventis.* (Brown's Max., p. 503.) Fearne, in his work on remainders, divides contingent remainders into four classes, and, in the fourth, includes the cases where the person to whom the remainder is limited, is not yet ascertained, or not yet in being. (Fearne on Rem., 5, p. 9.) By way of illustration he puts the case of a lease for life to one, remainder to the right heir of J. G., and adds: "Now, there can be no such person as the right heir of J. G., until his death, for *nemo est haeres viventis.*" Although Fearne's classification of contingent remainders has been somewhat criticized, yet no dissent has been expressed from his conclusion in the above case. The

same doctrine is laid down by Kent. (4 Com. 206, 208.) In *Morris* v. *Stephens* (46 Penn., 200), it was held that a deed, purporting to convey an estate to the heirs of a living person, was invalid for want of specifying a grantee. The same doctrine was held in *Hall* v. *Leonard* (1 Pick., 27), and in some subsequent cases. In *Beinley* v. *Carter* (17 Weekly Reporter), it was held by the lords justices of Appeals in Chancery, that the children of a person to whose heirs a remainder was limited, after the death of such person, had no interest in the estate during the life of such person. In *Campbell* v. *Rawdon* (18 N. Y., 412), this court assumed that such was the rule. Without any further examination of authorities, I think it may be safely assumed, that during the life of John Jackson, his children, by the common law, had no interest in the estate, by virtue of the deed of Samuel. It must still be considered, whether the statute gave them any such interest under that deed. It is claimed by the counsel for the respondent, that the remainder vested in the children, by § 13, 1 R. S., 723. That section provides, that future estates are either vested or contingent. They are vested when there is a person in being who would have an immediate right to the possession of the lands, upon the termination of the precedent estate. They are contingent whilst the person to whom, or the event upon which they are limited to take effect, remains uncertain. Section 9 defines a future estate as one commencing at a future day. It is argued, that inasmuch as the children of John Jackson were in being, and, in case of his death, would have been his heirs, to whom the remainder was limited in the deed of Samuel Jackson, and would have an immediate right to the possession of the land upon the termination of the life estate of their father, by his death, they answer precisely the description of persons in whom, by § 13, the remainder is declared to vest. But this, when read in connection with what in the last clause is declared to be a contingent remainder, does not vary from a vested remainder at common law. The latter clause declares that remainders are contingent, whilst the person to whom,

or the event upon which they are limited to take effect, remains uncertain. Now, we have already seen that a limitation to the heirs of a living person is uncertain, as to the person in whose favor the limitation is made, until the death of such person, for the reason, that until that event, it is uncertain who will be his heir. Thus it will be seen that the remainder in question is declared by the latter clause a contingent remainder during the life of John Jackson, for the reason, that until the happening of that event, the persons to whom it was limited are unknown. But it cannot be both. It must be either vested or contingent. All confusion is removed by referring to the common law. That required an ascertained known person in being who would have an immediate right of possession upon the termination of the precedent estate, to make the remainder vest in him. The latter clause of the section shows clearly that in this respect there was no intention to change the law. It is manifest that the remainder was no more vested in the children of John Jackson than it would have been in others who were presumptive heirs in case he had no children. Any presumptive heir would be equally entitled to possession at his death. The vesting of the remainder does not depend upon nearness in blood to him. My conclusion is, that the remainder did not vest in the children of John Jackson by § 13, but is by that section continued contingent as at common law. But it is claimed that this remainder was an expectant estate in the children during the life of John Jackson. If this be so, it goes far to show that the remainder had in some sense vested, for it is difficult to conceive of an estate in a person without his having some vested interest. The term estate, when applied to a person in respect to lands, implies that he has some vested interest therein. The first section of the statute, page 722, declares that estates in lands are divided into estates of inheritance for life, and for years, &c. Blackstone Com., 2d vol., 103, says: An estate in lands, &c., signifies such interest as the tenant has therein, so that if a man grants all his estate in Dale to A, and his heirs every-

thing that he can possibly grant, shall pass thereby. He further adds: That in Latin it is called *status*, it signifying the condition or circumstances in which the owner stands to his property. It is, I think, clear, that if the children of John Jackson had no vested remainder by virtue of the deed of Samuel Jackson, during the life of John, they had no estate in the land under it during that time. The 7th section of the statute enacts, that estates, as respects the time of their enjoyment, are divided into estates in possession, and estates in expectancy. Section 8 declares that an estate in possession, is where the owner has an immediate right to the possession of the land. That an estate in expectancy is where the right to the possession is postponed to a future period. The right, last spoken of, is a present right or estate in the land, as much as the first, but which does not entitle its owner to possession until some future period. This present right and estate in the land, giving the right of possession, at some future period, is the expectant estate, defined by statute; and the estates that are made descendible, devisable and alienable by § 35, in the same manner as estates in possession. I say, made so by § 35, although such estates possessed the same qualities, for the most part, at common law, and this section, is mainly declaratory; yet doubts, in some respects, had been entertained, as will be seen in *Miller* v. *Emans* (19 N. Y., 384), to remove which, the section in question was enacted. This section does not make the possibility of acquiring an estate in future alienable, any more than such possibilities were at common law. The children of John Jackson had no estate in the land, under the deed of Samuel Jackson, during the life of John, expectant or otherwise, but only the possibility of acquiring such estate, in case they were his heirs at the time of his death. It follows, that § 35 has no bearing upon the present case. Thus far, the plaintiff failed to show any title derived under the mortgage given by Parmenus and Edward Jackson to Beard. I have examined the cases cited by the counsel for the respondent, for the purpose of showing that the children had an estate in expectancy

within § 352; and think they fail to establish that proposition. The effect of the deed given by the eight other surviving children to Parmenus and Edward, remains to be considered. As remarked above, this deed was given upon a partition of the premises, made by the children after they had acquired the life estate by conveyance from John Jackson, and contains a covenant for quiet enjoyment by the grantees and their heirs. This deed was given during the lifetime of John Jackson, and, consequently, at a time when the only estate of the children in the land, was for the life of their father. The question is, whether, by virtue of this covenant, the interest in the fee, subsequently acquired by the grantors, as heirs of John, upon his death, under the deed from Samuel Jackson, inured to the benefit of the grantees, by estoppel or otherwise, and, consequently, to the mortgagee of the grantees. If it did, the plaintiff was entitled to nearly eight-twelfths of the premises. If not, nothing therein. No question is made but that if it inured to the grantees, it did to their mortgagee. The general rule is conceded that a title, subsequently acquired by one who has conveyed, with covenants of warranty, inures to the benefit of his grantee; as to which, see *Vanderheyden* v. *Crandall* (2 Denio, 9) ; same case (1 Comstock, 491) ; *Jackson* v. *Murray* (12 Johns., 201) ; *Same* v. *Stevens* (13 id., 316). As this rule is not disputed, a further citation of authorities would be superfluous. But it is insisted that the rule does not apply to this case, for the reason that the deed was given upon a partition of the estate. I know of no exception to the rule founded upon the purpose for which the deed was given, nor has the counsel cited any authority for making any; 2d, for the reason that there was no consideration for the covenant. Let us first inquire whether this is sustained by the facts before inquiring whether it is valid in law. The consideration for the covenant was a deed with like covenant given by the grantees to the grantors, of other lands, in all respects situated as to title like those in the present case, and to which the like estoppel applies in favor of the other parties. The consideration was, therefore, ample, and there is no

failure in respect to any of the surviving children of John Jackson, the estoppels operating in favor as well as against each. The counsel for the appellant insists that estoppels are confined in their operation to the very title and interest which the deed purports to convey, and cites numerous authorities in support of this position. The counsel is right in point of law. The warranty implied in the conveyance prior to the statute abolishing implied warranties in the absence of covenants, and the covenants of warranty when contained in the deed were always restricted in their operation to the quantum of interest which the deed purported to convey. But this does not aid the counsel in the present case, for the deed in question, so far from purporting to convey the life estate then owned by the parties, purports to convey the entire title absolutely; and by the principle of the above rule the covenant must be held to apply to the entire title. The counsel insists, that if the surviving children are held estopped by the covenant, as to each other, the like estoppel will apply as against them in favor of the son of Fanny Baldwin, who, as one of the children of John Jackson, united in the partition, and gave and received deeds with like covenants, conveying to her a portion of the lands partitioned in severally; and that if this be so, Fanny Baldwin having died in the lifetime of her father, John Jackson, and, consequently, never having been heir to him, acquired no portion of the remainder, and that her son taking his proportion of the remainder, as heir to John Jackson, and the portion conveyed to his mother, as her heir, will have a double portion. The answer to this is, that the consideration of the covenant for quiet enjoyment in the deed from the other children to Fanny Baldwin, has failed. That consideration was the like covenant from her to the other children, for the quiet enjoyment of their respective portions. This is broken by her death, without ever having acquired title, and the successful assertions of title by her son, to the portion which she conveyed. The consideration for the covenants to her failing, they become null as estoppels, the same as for other purposes.

The counsel also insists that covenants of warranty never operate as estoppels where any title or interest passes by the deed. I have examined the authorities cited in support of this position. Although some of the elementary works lay down this doctrine in unqualified terms, a close examination shows that it has its origin in the rule confining the operation of the covenant to the interest purported to be conveyed by the deed. (2 Washburn on Real Prop., 466, 467.) No well considered case has ever otherwise applied it. The reason assigned for applying the estoppel to cases only where nothing passes by the deed is unsound; that reason is, that the estoppel is applied to prevent the deeds being a nullity, and that where any interest passes, its application is unnecessary for this purpose. An examination will show that estoppels by deed are based upon other and sounder reasons. To hold where an estate for one year was owned by a grantor and passed by his deed purporting to convey the fee to his grantee, with covenants of warranty; that the subsequent acquisition of the fee by such grantor would not inure to the benefit of the grantee, although such acquisition would so inure in case the grantor had no estate in the land, and nothing passed by the deed would be absurd. Such a distinction has no foundation in principle, and is not sustained by such authority as to require this court to uphold it. My conclusion is, that the title acquired by the grantors in the deed to Parmenus and Edward Jackson, upon the death of John Jackson, inured to the grantees by virtue of the covenant for quiet enjoyment. Such title, of course, inures to the benefit of their mortgagees. The plaintiff, therefore, showed title to eight-elevenths of the premises claimed. The judgment appealed from should be reversed, unless the plaintiff stipulates to take judgment for eight-elevenths of the premises, and of that proportion of the mesne profits, and in case he shall so stipulate, the judgment should be modified in accordance therewith, and affirmed as modified.

JAMES also read an opinion for affirming the judgment on the ground that the children of John Jackson took a vested remainder under the statutes and which was alienable.

LOTT, MASON and MURRAY concurred with WOODRUFF and JAMES in holding the interest of the children a vested remainder. (HUNT, Ch. J., DANIELS and GROVER, JJ., dissented.)

HUNT, Ch. J., JAMES, LOTT, MARVIN, MURRAY and WOODRUFF, JJ., concurred in holding that the children had an alienable interest in the lands which passed by virtue of the deeds in partition and the mortgages in question. (GROVER dissented.)

Judgment affirmed.