HARRY C. KAYSER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 36652. Promulgated February 27, 1933.

*Edward Michling, Esq.,* for the petitioner.
*C. A. Ray, Esq.,* for the respondent.

818

OPINION.

ARUNDELL: The Lexington Avenue real estate was sold by petitioner in 1924 for $99,736.50. The respondent has taken as a basis for computing gain on this sale the March 1, 1913, value of the property on the theory that petitioner acquired it in 1912 under his father's will. Petitioner's contention is that he acquired the property in 1922 upon the death of Fischer, and the then value is the proper basis for computation of gain.

The rule established by the decided cases, under the revenue acts prior to that of 1928, is that if a remainder interest vests upon the death of the ancestor, the date of death is the date of acquisition by the remainderman and the basic date for determining gain or loss. *Rodman E. Griscom*, 22 B. T. A. 979; *William Huggett*, 24 B. T. A. 669; *Marian B. Pringle*, 26 B. T. A. 362; *Chandler v. Field*, 58 Fed. (2d) 370; affd., 63 Fed. (2d) 13; *Isabel R. Molter*, 27 B. T. A. 442.

The statutes of the State of New York (§40, ch. 52, L. 1909, McKinney's Consolidated Laws) declare that:

A future estate is either vested or contingent. It is vested, when there is a person in being, who would have an immediate right to the possession of the property, on the determination of all the intermediate or precedent estates. It is contingent while the person to whom or the event on which it is limited to take effect remains uncertain.

We think that under the above statute there can be little doubt that petitioner acquired a vested interest in the property upon the death of his father in 1912. The test as to vesting is stated in *Moore* v. *Littel*, 41 N. Y. 66, as follows:

If you can point to a man, woman, or child, who, if the life estate should now cease, would, *eo instanti et ipso facto*, have an immediate right of possession, then the remainder is vested.

This seems to be the settled rule of construction adopted by the courts of New York. See *Knapp* v. *Clark*, 84 Misc. Rep. 205; 146 N. Y. S. 926; *In re Steinwender's Estate*, 176 App. Div. 517; 163 N. Y. S. 309.

The law of New York as construed by its courts, and in most other jurisdictions, favors the vesting of estates, and unless a contrary intention is unequivocally expressed it will not be imputed. In *Connelly* v. *O'Brien*, 166 N. Y. 406; 60 N. E. 20, the court expressed the rule in this way:

A remainder is not to be construed as contingent in any case where it may fairly be construed to be vested, since the law favors the vesting of estates.

Under the above cases we hold that petitioner acquired a vested interest in 1912, and that accordingly March 1, 1913, is the basic date for determining the value. See also *Isabel R. Molter*, *supra*.

Petitioner points to the phrase " I then give, etc.," in the ninth clause of the will as operating to postpone vesting until after the termination of the life estates of the widow and Fischer. The same question was involved in *Connelly* v. *O'Brien*, *supra*, in which the will provided as follows:

I give all my estate, real and personal, after the payment of my debts, to my wife, Rose, during her life, and then to such of my children as may then be living, share and share alike.

In that case, after stating, as set forth above, that the law favors the vesting of estates, the court held that:

The adverbs of time, therefore, such as " when ", " then ", " after ", " from and after ", etc. in a devise of a remainder limited upon a life estate, are construed to relate merely to the time of the enjoyment of the estate, and not to the time of its vesting in interest.

Similarly in *Hersee* v. *Simpson*, 154 N. Y. 495; 48 N. E. 890, the court held that words or phrases denoting time in a devise of a remainder limited upon a particular estate " are construed to relate merely to the time of the enjoyment of the estate, and not to the

time of its vesting ". This case collects a number of New York decisions to the same effect on this point.

The parties seem to be agreed that the subject of valuation here is the physical property as distinguished from the remainder interest. Cf. *William Huggett, supra*. In the absence of a controversy on this point and an entire lack of evidence concerning it we feel bound to accept the value of the property as the basis upon which to calculate gain or loss. Cf. *Isabel R. Molter, supra*. The value of the remainder was probably less than that of property and if the respondent wished to claim an increased deficiency the burden was on him to establish the lower value.

The evidence fully sustains the respondent's valuation of the property. Four qualified witnesses for the respondent testified, and their valuations as of March 1, 1913, ranged from $50,000 to $55,000. Moreover, on December 3, 1913, petitioner in connection with New York transfer tax on the estate filed with the Surrogate of New York County a schedule setting forth that the "estimated market value" of the property was $48,000. Opposed to this was testimony of but one witness for the petitioner, who gave it as his opinion that the March 1, 1913, value was $70,600, without explanation as to how he arrived at that figure. We are satisfied that the fair market value of the property at the basic date was not in excess of $53,000.

Petitioner contends that there should be deducted from the sales price of the property the amount of $10,200, this being the aggregate of the yearly payments of $600 that he made to decedent's widow. We know of no provision of the statute which would permit the deduction from income of the amount so paid. If it is to enter into the computation of the income at all it would be as an addition to the basis rather than as a deduction from sales price. The basis used by the respondent in computing gain on the sale is the value of the entire property, that is, the fee, undiminished by the value of the life estates of the widow and Fischer. Undoubtedly in computing the cost of property the costs of extinguishing outstanding interests are properly included. But where the basis is value—as distinguished from cost—such costs can not possibly add to the value of the fee; their effect would be rather to decrease the value. It appears in this case that at the date of testator's death there was a mortgage on the property in the amount of $28,000. Certainly it would not be proper to add that amount to the value of a fee interest, yet it would be necessary to discharge that encumbrance as well as the life estates, before clear title to the property could be given. If the cost of discharging encumbrances is to be considered in determining the value of property, the extent to which they decrease value must first

be shown. In this case no evidence was offered by either party to show the effect of the life interests on the value of the property. And where, as here, the value of the entire property without diminution for encumbrances is used by respondent as a basis, the petitioner is not entitled to add thereto the cost of discharging one of the liens.

In disposing of the issue concerning the gain realized by petitioner in 1924 on the sale of the Lexington Avenue property, we have not overlooked what appears to be a variance between the recitals of the quitclaim deed, on the one hand, and the facts as agreed and testified to, on the other hand. The only deed in evidence is one dated June 26, 1912, by which the widow quitclaimed her interest in the property to Harry C. Kayser, as executor and trustee. It is alleged in the petition and admitted in the respondent's answer that in June, 1912, petitioner procured a quitclaim deed from the widow. Petitioner on the witness stand testified that prior to March 1, 1913, he bought out the interest of the widow. In petitioner's brief it is stated that he " personally and not as trustee " purchased the widow's rights in the property. There is nothing in the record to show that the quitclaim deed in evidence is the only conveyance to petitioner of the widow's interest. In view of the agreement in the pleadings, the petitioner's testimony, and his representation in his brief, we have proceeded on the theory that he personally acquired the interest of the widow.

The remaining question is whether petitioner is entitled to a loss deduction on account of the sale in 1924 of 60 shares of Stewart Dental Manufacturing Company stock. The stock had cost him $6,000 in 1914, and he transferred it to the president of the company in 1924 for the sum of $5. We can not doubt from the evidence that the stock was worthless in 1924.

But the evidence goes further than this and establishes with equal clarity that the stock became worthless some years prior to the taxable year. In fact Stewart, in an affidavit filed with the respondent and admitted in evidence in this proceeding, stated that in 1918 the company became insolvent and had no assets. While a sale is often convincing proof of a loss sustained, it must be a bona fide transaction. A stockholder may not select the year in which he will take a loss deduction by holding stock until long after it has become worthless and then disposing of it in a transaction like the one before us. See *De Loss* v. *Commissioner*, 28 Fed. (2d) 803. Stewart wanted the stock for a particular purpose and his offer of $5 does not establish that the stock continued to have a value during the years from 1918 to 1924. The statute allows deductions for loss in the years sustained and in this case the loss clearly was sustained prior to 1924.

*Decision will be entered under Rule 50.*