In the Matter of the Estate of HANNAH CASHMAN, Deceased.

Surrogate's Court, Oneida County, October 31, 1934.

*Bartle Gorman,* for the petitioner.

*Leo & Harry F. Coupe,* for the respondent.

EVANS, S.   This is a proceeding instituted by Thomas Quinlan in which he seeks an order of this court directing the county treasurer to pay over to him the sum of $1,525.48, with interest from January 1, 1934, less the fee of the county treasurer.   This money represents a portion of surplus money realized from a foreclosure action on the sale of certain real property located at 1012 Rutger street, Utica, N. Y.   This property was owned by the testatrix at the time of her death.   The disposition of this proceeding requires the construction of a portion of the last will and testament of this testatrix.

The paragraphs under consideration read as follows:

*Fourth.* " I give, devise and bequeath a life use of the premises known as No. 1017 Rutger St., Utica, N. Y. to my said son James Cashman and upon the death of my said son, I give, devise and bequeath these said premises to my niece and nephew, Margaret

Rickerby and James Rickerby, share and share alike, or to the survivor. In the event that my said niece and nephew shall both predecease my said son, then and in such case I give, devise and bequeath said premises to my nephew Thomas Quinlan."

*Sixth.* "All the rest, residue and remainder of my property, of every name and nature and wheresoever situate, I give, devise and bequeath to my son, James Cashman."

The testatrix died on or about October 29, 1920, and her last will was admitted to probate by this court on November 29, 1920. Her son, James Cashman, was her only heir at law and next of kin and pursuant to the terms of the will he entered into the enjoyment of the real property. The mortgagee brought an action in foreclosure and the surplus money arising therefrom amounted to the sum of $3,112.15. This money was paid over to the county treasurer and thereafter it was administered by the administrator c. t. a., who in due course had a judicial settlement in Surrogate's Court. At this time James Cashman, the life tenant, elected to receive $1,714.57 as a gross sum in lieu of his life estate pursuant to the provisions of rule 30 of the Rules of Civil Practice.

The balance, amounting to $1,107.83, was directed to be paid to the treasurer of Oneida county subject to the order of the Surrogate's Court, for the remaindermen as they may be entitled under the terms of the will. James Cashman is now living and is respondent in this proceeding. Margaret Rickerby and James Rickerby are both deceased. It is the contention of Thomas Quinlan that he is now entitled to have paid to him the money now in the hands of the county treasurer. James Cashman disputes the claim of Thomas Quinlan and asserts in substance that this application is premature and that the right of Mr. Quinlan is subject to his surviving Mr. Cashman, the life tenant. The latter asserts that, in the event of his surviving Mr. Quinlan, as residuary legatee he will be entitled to this fund. The controversy becomes narrowed to a determination of what, if any, interest Mr. Quinlan has in the fund during the lifetime of the life tenant. The further question is presented whether any interest that he may have can be satisfied before the death of the life tenant.

It is elementary in construing a will that the primary duty of a court is to ascertain the intent of the testator or testatrix, as the case may be. The evident purpose here was to provide a home for James Cashman for life.

If there had been no sale of the property, his right to a life use of it is plain. There is no provision in the will for a contingency whereby the corpus of the property should vest in the life tenant. The rights of James and Margaret Rickerby in the property

depended upon their survivorship of James Cashman, the life tenant. The rights of Thomas Quinlan in the first instance amounted to a mere possibility based upon his survivorship of James and Margaret Rickerby in the event of their death during the lifetime of James Cashman.

This event has happened and Thomas Quinlan became a vested remainderman subject to the life use of James Cashman with no other conditions attached.

This conclusion, I think, is in harmony with the requirements of both case and statutory law. A vested remainder is defined as follows: "It is vested, when there is a person in being, who would have an immediate right to the possession of the property, on the determination of all the intermediate or precedent estates." (Real Prop. Law, § 40.)

Upon the termination of the life use of James Cashman it seems to me clear that Thomas Quinlan would have an "immediate right to the possession of the lands." (*Moore* v. *Littel*, 41 N. Y. 66, 76.)

Attention should now be centered on the problem as to whether the petitioner can now claim payment to him of the money representing the value of the corpus of the property obtained from its sale or whether the time of such payment must be postponed until after the death of the life tenant.

The life tenant, by accepting a gross sum of money, in effect sold his interest in the life estate. He derives no benefit from the money held by the county treasurer and is entitled to none. He terminated his interest by his own act and I think became a legal stranger to this proceeding.

There appears to be no intervening interest between the petitioner and the property and I think that he is now entitled to its immediate possession.

Decreed accordingly.